UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 1. CHEYENNE-ARAPAHO TRIBES OF OKLAHOMA, <br> 100 Black Kettle Boulevard <br> Concho, Oklahoma 73022 <br> 405.422.1151 <br><br> Plaintiff, <br><br> vs. <br><br> 1. UNITED STATES OF AMERICA; <br> 2. UNITED STATES DEPARTMENT OF AGRICULTURE; <br> 14th and Independence Avenue, S.W. <br> Washington, D.C. 20250 <br> 202.720.3631 <br> 3. ANNE VENEMAN, SECRETARY OF AGRICULTURE, in her official capacity; <br> 4. UNITED STATES DEPARTMENT OF THE INTERIOR; <br> 1849 C Street, N.W. <br> Washington, D.C. 20240 <br> 202.208.7351 <br> 5. GAIL NORTON, SECRETARY OF THE INTERIOR; in her official capacity; <br> 6. UNITED STATES DEPARTMENT OF JUSTICE; <br> 950 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20530 <br> 202.514.2001 <br> 7. ALBERTO GONZALEZ; <br> ATTORNEY GENERAL; in his official capacity, <br> Defendants. | ) ) ) ) ) ) ) ) ) ) Civil Action No. ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT**

Plaintiff, Cheyenne-Arapaho Tribes of Oklahoma files this case to void the unlawful abrogation of its Treaty-based property rights over approximately ninety-six hundred acres of federally controlled lands located in Canadian County Oklahoma, also known as the Fort Reno lands, ("Fort Reno") which were transferred from their 1869

executive order reservation to the United States for "military purposes exclusively" pursuant to Executive Order of President Chester A. Arther, on July 17, 1883, less and except those lands which were transferred on May 24, 1937, pursuant to public law 75-103.   The Cheyenne-Arapaho Tribes seek a declaration that the subject lands are currently and have been, lands owned by the United States of America in trust for the benefit of the Cheyenne-Arapaho Tribes of Oklahoma, prior to and subsequent to the jurisdictional transfer of the subject lands to the Agencies cited herein.

## PARTIES

1.  Plaintiff, Cheyenne-Arapaho Tribes of Oklahoma ("Tribes"), is a federally recognized Indian tribe.

2. Defendant, United States of America, is a sovereign nation, organized under the United States Constitution and the laws of the United States.

3.  Defendant United States includes various agencies and commissions organized and operating under the laws of the United States, including those agencies herein mentioned.

4.  Defendant, United States Department of Agriculture, is an administrative agency of the United States who has jurisdiction over all of the surface rights to the lands herein described with the exception of those surface rights controlled by the Department of Justice.

5. Defendant, Anne Veneman, is the Secretary of the Department of Agriculture, and oversees and administers the operations of the Department of Agriculture, including the Agriculture Research Service which operates a research facility on the surface lands herein described and over which it exercises jurisdiction.

6. Defendant, Department of the Interior, is an administrative agency of the United States who has jurisdiction over all mineral rights to federal lands.

7. Defendant, Gale A. Norton is the Secretary of the Interior, and oversees and administers the operations of the DOI, including, but not limited to, the Bureau of Land Management, which has jurisdiction over all mineral rights with respect to Fort Reno.

8. Defendant, United States Department of Justice is an administrative agency of the United States who through its agency has jurisdiction over the balance of surface rights at Fort Reno.

9. Defendant, Alberto Gonalez, is the Attorney General, and oversees and administers the operations of the Department of Justice including, but not limited to, the Bureau of Prisons, which has jurisdiction over the surface rights at Fort Reno not controlled by the USDA-ARS.

## JURISDICTION AND VENUE

10. This court has jurisdiction over this action under:

    a. 28 USC section 1331 (federal question); and

    b. 28 USC section 1332 (actions brought by Indian Tribes); and

    c. 28 USC section 2201 (declaratory judgement).

11. The sovereign immunity of the United States including its agencies and commissions, is waived for purposes of this action by the Quiet Title Act ("QTA") pursuant to 28 USC 2409 et.seq. Venue is proper in the District court under 28 USC 1391(e), since this action is brought in the District where defendants reside and a substantial part of the events or omissions giving rise to the claims set forth in this complaint occurred.

## GENERAL ALLEGATIONS

12. That the original Cheyenne-Arapaho Indian Reservation, pursuant to Executive Order dated August 10, 1869, included the Fort Reno lands, and

9. That pursuant to executive Order of July 17, 1883, the Fort Reno reserve was "carved out" of the original 1869 executive order reservation, for "military purposes exclusively" with the contemplation it would be returned to the Tribe when no longer needed, and

10. That on March 3, 1891, the Cheyenne-Arapaho Tribes ceded "subject to the individual allotments in severalty" and "subject to the conditions hereinafter imposed" upon their selection, all the Tribes interest in the 1869 executive order reservation, (see 26 Stat. 989, @ 1022), and

11. That it was the understanding at the time that the cession of the Fort Reno lands were excluded through the "conditions hereinafter imposed language" in the subject Treaty, and

12. That Fort Reno remained in the hands of the military, even after the cavalry abandoned the post and turned the site over to the quartermaster for a remount station, in 1908, and

13. That on May 24, 1937, nine hundred and sixty acres of Fort Reno were transferred to the Department of Justice for prison purposes, (see Public Law 75-103), and

14. That on August 13, 1946, Congress passed the Indian Claims Commission Act to allowed monetary claims for all lands taken prior to such date, (see 25 USCA section 70(a), and

15. That on August 13, 1946, except for lands transferred to the Justice Department in 1937, all lands at Fort Reno were still occupied by the Military remount station, and

19. That on April 21, 1948, all but roughly fifteen hundred acres of what remained of Fort Reno, was "jurisdictionally", transferred to the Department of Agriculture without hearing or report, (see 62 Stat. 197, Public Law 80-494), and

20. That in 1951, the Tribes filed suit in the Indian Claims Commission for Damages for lands which were unconscionably ceded in 1891 (see Ind.Cl.Comm. 10), and

22. That on April 27, 1954, following local hearings on the status of the property concerning the proposed closure of the remount station located at Fort Reno, the Army requested that certain "facilities" at Fort Reno be kept in a "standby" status for use by the Army, citing a need for the equine program at the station as a result of conflict in Indo-China, and

24. That this request was granted and deemed "classified" under the National Security Act of 1947 and until its release in 1994, with a public assertion that the Fort Reno lands had been set aside for "possible military purposes", and

25. That no equine was ever trained or otherwise used on the property in connection to its proposed needs for Indo-China, and

26. That in 1958, the Tribes filed a severed petition in its claim to the Indian Claims Commission requesting that the land be returned to the Tribes through the Commission's "powers in equity", and

27. That in 1963, the Secretary of the Interior, pursuant to E.O. 10355, transferred another sixteen hundred acres to the Department of Justice for prison purposes, and

28. That the Tribes, in 1965, settled a compromise claim in the Indian Claims Commission for all lands taken prior to August 13, 1946, (see 16 Ind.Cl.Comm.162), and

29. That in 1972, Congress passed the Quiet Title Act, 28 USCA 2409(a), the only physical recovery remedy to date, and

30. That in 1975, the Federal Surplus Property and Administrative Services Act, ("The Excess Property Act") was amended by adding 40 USCA 483(a)(2) to provide that any Oklahoma federal land deemed "excess" to the needs of a specific agency had to be returned to the Tribe from where it came, and

31. That on March 18, 1994, the Department of Agriculture released a memorandum opinion citing that the Fort Reno lands had been ceded in 1891, and

32. That in January 1995, The Secretary of Veterans Affairs, while trying to locate a National Cemetery on the site cited a "clouded title" which served to frustrate such efforts, and

33. That on February 26, 1999, the Department of the Interior released a memorandum opinion which found that the lands had not been ceded in 1891 and that the Tribe held beneficial title in 1948 when the jurisdiction was transferred to the USDA, but that the claim was untimely under the QTA, and

34. That in the fall of 1999 and 2000, a rider was placed on FY 2000 and FY

2001 Agriculture Appropriations bills to stop the transfer of the subject property to the Interior Department pursuant to the Excess Property Act, and

35. That in August of 2002, the Excess Property Act was amended to eliminate the automatic transfer of the subject property prior to interested federal and non-federal agency requests, and

36. That in January of 2005, the Tribes discovered the "de-classified" material regarding the set-aside for "possible military use" of the Fort Reno property in 1954, pursuant to research by its claims attorney.

## First Claim for Relief

**The Tribes rights to Fort Reno survived the transfer of jurisdiction to the Property to the United States Department of Agriculture in 1948 and the closing of the remount station in 1954**

37. Plaintiff re-alleges each of the allegations set forth in Paragraphs 1-36 above, and by this reference incorporates each such allegation herein as set forth in full.

38. The Executive Order of July 17, 1883, created a vested right of the Tribes to the Fort Reno lands once the military abandoned the property.

39. The Treaty of 1891 left this reservation intact as it did not transfer any rights The Tribes had in the property to the Federal Government.

40. The Transfer in 1937, of a portion of the Fort Reno property to the Department of Justice, pursuant to Public Law 75-103, such claim having been settled in the Indian Claims Commission because it occurred prior to August 13, 1946, did not affect the Tribes claim to the balance of the Fort Reno property.

41. Although Congress abrogated some of these rights with the transfer of **"jurisdiction"** of the Fort Reno lands to the Department of Agriculture in 1948, pursuant to Public Law 80-494, 62 Stat. 197, Congress did not extinguish the Tribes beneficial title rights to such property.

42. The Tribes subject to the transfer in 1937, cited herein in paragraph 32, hold beneficial title to said lands including the surface and mineral estates, such lands being held in Trust by the United States for the Tribes.

43. The setting aside of certain Fort Reno facilities in 1954 for **"possible military use"** while publicly stating that "Fort Reno" was set aside constituted, either a misrepresentation by the United States as to its intended use of the property, or an extension of the "military use" of the subject property thereby extending the Tribes reversionary interest in the property.

44. The Tribes currently hold beneficial title to the Fort Reno lands subject to the jurisdictional status of the USDA which resulted as an abrogation of the Tribes Treaty rights.

**Second Claim for Relief**

**Because of the United States abrogation of the Tribes Treaty Rights the Tribe lost decades of beneficial use of the surface and mineral estate to Fort Reno**

39. Plaintiff re-alleges each of the allegations set for in paragraph 1-36 above and asserts this second claim for relief.

40. Because of the claims for relief set out in paragraphs 37 through 44 the Tribes have lost a half-century of beneficial use of the surface and mineral estates to the property.

## PRAYER FOR RELIEF

Pursuant to its First and Second Claim for Relief:

1. That the Court issue a judgment in favor of Plaintiff and against Defendants declaring beneficial title ownership to those Fort Reno lands that remained in military possession after August 13, 1946;

2. That the Court issue a judgment in favor of Plaintiff and against Defendants declaring that the Plaintiff retained jurisdiction over the mineral estate beneath the Fort Reno lands;

3. That the Court issue a judgment n favor of Plaintiff and against Defendants that preliminarily and permanently enjoins the United States from leasing the mineral rights to Fort Reno without the Tribes interest being addressed;

4. That the Court issue a judgment in the favor of the Plaintiff and Against Defendants that awards damages for lost beneficial use of the subject property;

5. That the Court award Plaintiff cost of suit.

6. That the Court award Plaintiff such other relief that this Court deems just and proper.

Respectfully submitted,

LAW OFFICE OF JOHN P. RACIN

_____
John P. Racin Bar No. 942003
1721 Lamont Street, N.W.
Washington, D.C.  20010
202.265.2516

    _____
Charles B. Morris, Attorney General
Cheyenne-Arapaho Tribes of Oklahoma
OBA #16019 Pro Hac Vice Impending
P.O. Box 102 Concho, Ok. 73022
Phone: (405) 834-6724
Fax:    (405) 262-7901
e-mail: chasmorr@cox.net