UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHEYENNE-ARAPAHO TRIBES )
OF OKLAHOMA, )
100 Black Kettle Boulevard )
Concho, Oklahoma 73022 )
405.422.1151 )
)
    Plaintiff, )
)
    vs. ) Civil Action No. 06-519 (PLF)
)
UNITED STATES OF AMERICA )
)
UNITED STATES DEPARTMENT )
 OF AGRICULTURE )
14th and Independence Avenue, S.W. )
Washington, D.C. 20250 )
292.720.3631 )
)
MIKE JOHANNS, SECRETARY )
 OF AGRICULTURE, in his official capacity )
)
UNITED STATES DEPARTMENT )
 OF THE INTERIOR )
1849 C Street, N.W. )
Washington, D.C. 20240 )
202.208.7351 )
)
DIRK KEMPTHORNE, SECRETARY )
 OF THE INTERIOR, in his official capacity )
)
UNITED STATES DEPARTMENT )
 OF JUSTICE )
950 Pennsylvania Avenue, N.W. )
Washington, D.C. 20530 )
202.514.2001 )
)
ALBERTO GONZALEZ, ATTORNEY )
 GENERAL OF THE UNITED STATES, )
 in his official capacity )
)
    Defendants. )
)
_____ )

**RECEIVED**

JUL 1 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## FIRST AMENDED COMPLAINT

Plaintiff, Cheyenne-Arapaho Tribes of Oklahoma, files this case to void the unlawful abrogation of its Treaty-based property rights over approximately ninety-six hundred acres of federally controlled lands located in Canadian County Oklahoma, also known as the Fort Reno lands, ("Fort Reno") which were transferred from their 1869 executive order reservation to the United States for "military purposes exclusively" pursuant to Executive Order of President Chester A. Arthur, on July 17, 1883, less and except those lands which were transferred on May 24, 1937, pursuant to public law 75-103.    The Cheyenne-Arapaho Tribes seek a declaration that the subject lands are currently and have been, lands owned by the United States of America in trust for the benefit of the Cheyenne-Arapaho Tribes of Oklahoma, prior to and subsequent to the jurisdictional transfer of the subject lands to the Agencies cited herein.

## PARTIES

1. Plaintiff Cheyenne-Arapaho Tribes of Oklahoma ("Tribes") is a federally recognized Indian tribe.

2. Defendant United States of America is a sovereign nation organized under the United States Constitution and the laws of the United States.

3. Defendant United States includes various agencies and commissions organized and operating under the laws of the United States, including those agencies herein mentioned.

4. Defendant United States Department of Agriculture is an administrative agency of the United States which has jurisdiction over all of the surface rights to the lands herein described, with the exception of those surface rights controlled by the

Department of Justice.

5. Defendant Mike Johanns is Secretary of the Department of Agriculture and oversees and administers the operations of the Department of Agriculture, including the operations of the Agriculture Research Service, which operates a research facility and exercises jurisdiction on the surface lands herein described.

6. Defendant Department of the Interior is an administrative agency of the United States which has jurisdiction over all mineral rights to federal lands.

7. Defendant Dirk Kempthorne is the Secretary of the Interior and oversees and administers the operations of the Department of the Interior, including, but not limited to, the operations of the Bureau of Land Management, which has jurisdiction over all mineral rights with respect to Fort Reno.

8. Defendant United States Department of Justice is an administrative agency of the United States which has jurisdiction of the remaining surface rights at Fort Reno.

9. Defendant Alberto Gonzalez is Attorney General of the United States and oversees and administers the operations of the Department of Justice including, but not limited to, the operations of the Bureau of Prisons, which has jurisdiction over the surface rights at Fort Reno not controlled by the Agricultural Research Service of the United States Department of Agriculture.

<u>JURISDICTION AND VENUE</u>

10. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1505, 2201 and 2409a.

11. The sovereign immunity of the United States and its agencies and commissions is waived for purposes of this action by the Quiet Title Act ("QTA"), 28

-3-

U.S.C. 2409a. Venue is proper in this Court pursuant to 28 U.S.C. 1391(e), in that the action is brought in the District where Defendants are located, and where many of the acts and omissions giving rise to the claims set forth in this Complaint took place.

## GENERAL ALLEGATIONS

12. That the last recognized Cheyenne-Arapaho Tribes of Oklahoma Indian Reservation, pursuant to Executive Order dated August 10, 1869, included the Fort Reno lands, and

13. That pursuant to Executive Order of July 17, 1883, the Fort Reno reserve was "carved out" of the original 1869 executive order reservation, for "military purposes exclusively" with the contemplation it would be returned to the Tribe when no longer needed, and

14. That on March 3, 1891, the Cheyenne-Arapaho Tribes ceded "subject to the individual allotments in severalty" and "subject to the conditions hereinafter imposed" upon their selection, all the Tribes interest in the 1869 executive order reservation, (see 26 Stat. 989, 1022), and

15. That it was the understanding at the time that the cession of the Fort Reno lands were excluded through the "conditions hereinafter imposed" language in the subject Treaty, and

16. That Fort Reno remained in the hands of the military, even after the cavalry abandoned the post and turned the site over to the quartermaster for a remount station, in 1908, and

17. That on May 24, 1937, approximately 1000 acres of Fort Reno lands were transferred to the Department of Justice for prison purposes, (see Public Law 75-103),

and

18. That on August 13, 1946, Congress passed the Indian Claims Commission Act to allowed monetary claims for all lands taken prior to such date, (see 25 U.S.C. section 70(a)), and

19. That on August 13, 1946, with the exception of lands transferred to the Justice Department in 1937, all lands at Fort Reno were still occupied by the United States military, and

20. That on April 21, 1948, approximately 7000 acres of Fort Reno lands were "jurisdictionally" transferred to the Department of Agriculture without benefit of Congressional hearing or report, (see 62 Stat. 197, Public Law 80-494), and

21. That in 1951, the Tribes filed an action in the Indian Claims Commission deriving from the unconscionably low consideration paid for lands ceded in 1891, and

22. That on April 27, 1954, following local hearings on the status of the property in light of proposed closure of the remount station located at Fort Reno, the Army requested that certain "facilities" at Fort Reno be kept in a "standby" status for use by the Army, citing a need for the equine program at the station as a result of conflict in Indo-China, and

23. That the request was granted and deemed "classified" under the National Security Act of 1947 until release of the information in 1994, with a public assertion that the Fort Reno lands had been set aside for "possible military purposes", and

24. That the request on the part of the United States was believed to be sufficient to invalidate any of Plaintiff Tribes' claims to the lands of Fort Reno at the time, and

-5-

25. That in 1958, the Tribes filed a supplemental petition in its claim to the Indian Claims Commission requesting that the land be returned to the Tribes through the Commission's "powers in equity", and

26. That in 1963 the Secretary of the Interior transferred another sixteen hundred acres to the Department of Justice pursuant to Executive Order 10355 for purposes of maintaining a penal institution, and

27. That in 1965 Plaintiff Tribes settled a compromise claim in the Indian Claims Commission for all lands taken prior to August 13, 1946, (see 16 Ind.Cl.Comm.162), and

28. That in 1972 Congress passed the Quiet Title Act, 28 U.S.C. 2409a, the only remedy for recovery of lands in which the United States claimed an interest, and

29. That in 1975, the Federal Surplus Property and Administrative Services Act, ("The Excess Property Act") was amended by adding 40 U.S.C. 483(a)(2) to provide that any Oklahoma federal land deemed "excess" to the needs of a specific agency had to be returned to the Tribe from which acquired, and

30. That on March 18, 1994, the Department of Agriculture released a memorandum opinion citing that the Fort Reno lands had been ceded in 1891, and

31. That in January 1995 the Secretary of Veterans Affairs, in an effort to establish a National Cemetery on the site cited a "clouded title" which frustrated the effort, and

32. That on February 26, 1999, the Department of the Interior released a memorandum opinion holding that the lands had not been ceded in 1891 and that the Tribe held beneficial title in 1948 when the jurisdiction was transferred to the United States Department of Agriculture, but finding the claim to be beyond the twelve year

limitations period prescribed by the QTA, and

33. That in the fall of 1999 and 2000, a rider was placed on FY 2000 and FY 2001 Agriculture Appropriations bills to prevent transfer of the subject property to the Interior Department pursuant to the Excess Property Act, and

34. That in August of 2002, the Excess Property Act was amended to eliminate the automatic transfer of the subject property prior to interested federal and non-federal agency requests, and

35. That in January of 2005, the Tribes discovered the "de-classified" material regarding the set-aside for "possible military use" of the Fort Reno property in 1954, pursuant to research by its claims attorney.

### FIRST CLAIM FOR RELIEF

The Plaintiff Tribes Right to Fort Reno Lands
Survived the 1948 Jurisdictional Transfer to
the United States Department of Agriculture
and Closure of the Remount Station in 1954

36. Plaintiff re-alleges each of the allegations set forth in Paragraphs 1-35 above, and by this reference incorporates each such allegation herein as set forth in full.

37. The Executive Order of July 17, 1883 left a reversionary interest in Fort Reno lands to Plaintiff Tribes once the United States military abandoned the property.

38. The Treaty of 1891 left this reversionary interest intact, in that it did not serve to transfer any of Plaintiff Tribes' rights in the property to the Federal Government.

39. The transfer of a portion of the Fort Reno lands to the Department of Justice in 1937 pursuant to Public Law 75-103 does not impair Plaintiff Tribes' claim to the remaining lands, in that the transfer occurred prior to passage of the Indian Claims

Commission Act of 1946.

40.  Although Congress transferred jurisdiction in 1948 to certain lands at Fort Reno to the United States Department of Agriculture pursuant to Public Law 80-494, 62 Stat. 197, it did not extinguish all Plaintiff Tribes' right, title and interest in lands of Fort Reno.

41.  Action on the part of the action of the United States in 1954 to reserve only certain buildings and related lands for "possible military use" while publicly proclaiming all the lands of Fort Reno to be set aside constituted a misrepresentation as to the intended use of the property; or, in the alternative, constituted an extension of its "military use", which preserved Plaintiff Tribes' reversionary interest.

42.  Subject only to the 1937 transfer of lands to the Department of Justice as aforesaid, Plaintiff Tribes have a beneficial interest in lands of Fort Reno, including surface and mineral rights thereto.

SECOND CLAIM FOR RELIEF

As a Direct and Proximate Result of the Improper
Abrogation of Treaty Rights, Plaintiff Tribes Were
Denied Beneficial Use of the Lands of Fort Reno,
Including Exercise of Surface and Mineral Rights

43.  Plaintiff re-alleges each of the allegations set for in paragraph 1-35 above and asserts this second claim for relief.

44.  Because of the claims for relief set out in paragraphs 37 through 42 Plaintiff Tribes have lost a half-century of beneficial use of the surface and mineral estates to the property.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tribes respectfully prays that this Court:

A.  Enter judgment against Defendants declaring Plaintiff Tribes' continuing beneficial interest, including surface and mineral rights, in the lands of Fort Reno remaining under the control of the U.S. military after August 13, 1946;

B.  Enter judgment enjoining Defendants from leasing surface and mineral rights in lands of Fort Reno pending an accounting of Plaintiff Tribes' beneficial interest therein;

C.  Enter an award of costs against Defendants; and

D.  Grant such additional relief as the Court deems just and proper.

Respectfully submitted,

John P. Racin Bar No. 942003
Law Office of John P. Racin
1721 Lamont Street, N.W.
Washington, D.C.  20010
202.265.2516

Richard J Grellner
Law Office of Richard J Grellner
439 NW 18th St
Oklahoma City, OK 73103
405-602-0384
OBA # 15521, Pro Hac Vice Impending

Charles B. Morris, Attorney General
Cheyenne-Arapaho Tribes of Oklahoma
P.O. Box 102, Concho, OK 73022
405.834.6724
OBA #16019, Pro Hac Vice Impending

Attorneys for Plaintiff Tribes