**ATTACHMENT  G**

For printing and binding the monographs and bulletins, twenty-five thousand dollars;

For the Department of Justice, seven thousand dollars;

For the Post-Office Department, two hundred thousand dollars;

For the Agricultural Department, including ten thousand dollars for the Weather Bureau, seventy-five thousand dollars;

For the Department of Labor, eight thousand dollars;

For the Supreme Court of the United States, seven thousand dollars;

For the supreme court of the District of Columbia, one thousand five hundred dollars;

For the Court of Claims, twelve thousand dollars;

For the Library of Congress, fifteen thousand dollars;

For the Executive Office, three thousand dollars.

And no more than an allotment of one-half of the sum hereby appropriated shall be expended in the two first quarters of the fiscal year, and no more than one-fourth thereof may be expended in either of the two last quarters of the fiscal year, except that, in addition thereto, in either of said last quarters, the unexpended balances of allotments for preceding quarters may be expended. *Limited periods for expenditure of allotments.* *Unexpended balances.*

For purchase of new printing presses, one hundred thousand dollars; *New printing presses.*

To enable the Public Printer to comply with the provisions of the law granting thirty days' annual leave to the employees of the Government Printing Office, one hundred and fifty thousand dollars, or so much thereof as may be necessary; *Annual leaves to employees of Government Printing Office.*

To pay pro-rata leaves of absence to employees who resign or are discharged (decision of the First Comptroller), fifteen thousand dollars: *Pro-rata leaves upon resignation, etc.*

*Provided,* That the appropriation made in the sundry civil appropriation act approved August thirtieth, eighteen hundred and ninety, "to provide accommodations for the Government Printing Office," and the authority for the expenditure of the same, therein conferred, be and the same are hereby suspended. *Proviso. Purchase, etc., of land for new Government Printing Office, suspended. Ante, pp. 412, 413.*

Approved, March 3, 1891.

---

**CHAP. 543.**—An act making appropriations for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes, for the year ending June thirtieth, eighteen hundred and ninety-two, and for other purposes. *March 3, 1891.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the following sums be, and they are hereby, appropriated, out of any money in the Treasury not otherwise appropriated, for the purpose of paying the current and contingent expenses of the Indian Department for the year, ending June thirtieth, eighteen hundred and ninety-two, and fulfilling treaty stipulations with the various Indian tribes, namely: *Indian Department appropriations.*

For pay of fifty-eight agents of Indian affairs at the following named agencies, at the rates respectively indicated, namely: *Pay of agents at specified agencies.*

At the Warm Springs Agency, at one thousand two hundred dollars;

At the Klamath Agency, at one thousand two hundred dollars;

At the Grand Ronde Agency, at one thousand two hundred dollars;

At the Siletz Agency, at one thousand two hundred dollars;

At the Umatilla Agency, at one thousand two hundred dollars;

At the Neah Bay Agency, at one thousand two hundred;

At the Yakama Agency, at one thousand eight hundred dollars;

At the Colville Agency, at one thousand five hundred dollars;

At the Puyallup (consolidated) Agency, embracing Nisqually and

be deducted and paid to said attorney or attorneys. That the Secretary of the Interior and the Secretary of the Treasury shall transmit to said Court of Claims, upon its request, certified copies of all records, documents, and papers that relate in any way to the accounts of said Indians under the various treaties with said tribe, and shall furnish such excerpts and statements and accounts regarding the same as may be called for during the progress of said suit and in said suits all claims against the United States on behalf of either of said bands of Indians, or on behalf of one band against the other shall be tried and determined and judgment rendered as shall be found just and right.

*Agreement with Cheyennes and Arapahoes ratified.*

SEC. 13. The following agreement entered into by the Commissioners named below on the part of the United States, and the Cheyenne and Arapahoe Tribes of Indians on the —— day of October, eighteen hundred and ninety, and now on file in the Interior Department, signed by the said Commissioners on the part of the United States, and by Left Hand, his mark, and five hundred and sixty-four others, on the part of the said Indians, is hereby accepted, ratified and confirmed, to wit:

"Articles of agreement made and entered into at Darlington, in the Indian Territory, on the —— day of October, A. D. eighteen hundred and ninety, by and between David H. Jerome, Alfred M. Wilson, and Warren G. Sayre, commissioners on the part of the United States, and the Cheyenne and Arapahoe tribes of Indians, in the Indian Territory.

*ARTICLE I.*

## ARTICLE I.

*Lands ceded absolutely.*

"The said Cheyenne and Arapahoe tribes of Indians hereby cede, convey, transfer, relinquish, and surrender forever and absolutely, without any reservation whatever, express or implied, all their claim, title, and interest of every kind and character, in and to the lands embraced in the following described tract of country in the Indian Territory, to-wit: A tract of country west of the ninety-sixth degree of west longitude, bounded by the Arkansas River on the east, the thirty-seventh parallel of north latitude (being the southern boundary line of the State of Kansas) on the north, and the Cimarron or Red Fork of the Arkansas River on the west and south.

*Description.*

*ARTICLE II.*

## ARTICLE II.

*Lands ceded subject to allotment.*

"Subject to the allotment of land in severalty to the individual members of the Cheyenne and Arapahoe tribes of Indians, as hereinafter provided for and subject to the conditions hereinafter imposed, for the considerations hereinafter mentioned the said Cheyenne and Arapahoe Indians hereby cede, convey, transfer, relinquish, and surrender forever and absolutely, without any reservation whatever, express or implied, all their claim, title and interest, of every kind and character, in and to the lands embraced in the following described tract of country in the Indian Territory, to-wit:

*Description.*

Commencing at a point where the Washita River crosses the ninety eighth degree of west longitude, as surveyed in the years eighteen hundred and fifty-eight and eighteen hundred and seventy-one; thence north on a line with said ninety-eighth degree to the point where it is crossed by the Red Fork of the Arkansas (sometimes called the Cimarron River); thence up said river, in the middle of the main channel thereof, to the north boundary of the country ceded to the United States by the treaty of June fourteenth, eighteen hundred and sixty six, with the Creek nation of Indians; thence west on said north boundary and the north boundary of the country ceded to the United States by the treaty of March twenty first, eighteen hundred and sixty six, with the Seminole Indians, to

the one hundredth degree of west longitude; thence south on the line of said one hundredth degree to the point where it strikes the North Fork of the Red River; thence down said North Fork of the Red River to a point where it strikes the north line of the Kiowa and Comanche Reservation; thence east along said boundary to a point where it strikes the Washita River; thence down said Washita River, in the middle of the main channel thereof, to the place of beginning; and all other lands or tracts of country in the Indian Territory to which they have or may set up or allege any right, title, interest or claim whatsoever.

### ARTICLE III

Out of the lands ceded, conveyed, transferred, relinquished, and surrendered by Article II hereof, and in part consideration for the cession of lands named in the preceding article, it is agreed by the United States that each member of the said Cheyenne and Arapahoe tribes of Indians over the age of eighteen years shall have the right to select for himself or herself one hundred and sixty acres of land, to be held and owned in severalty, to conform to legal surveys in boundary; and that the father, or, if he be dead, the mother, for members of either of said tribes of Indians, shall have a right to select a like amount of land for each of his or her children under the age of eighteen years; and that the Commissioner of Indian Affairs, or some one by him appointed for the purpose, shall select a like amount of land for each orphan child belonging to either of said tribes under the age of eighteen years.

### ARTICLE IV.

"It is further agreed that the land in said reservation shall be classed as bottom land and grazing land; and, in making selection of lands to be allotted in severalty as aforesaid, each and every Indian herein provided for shall be required to take at least one-half in area, of his or her allotments, of grazing land. It is hereby further expressly agreed that no person shall have the right to make his or her selection of land in any part of said reservation that is now used or occupied for military, agency, school, school-farm, religious, or other public uses, or in sections sixteen and thirty-six in each Congressional township, except in cases where any Cheyenne or Arapahoe Indian has heretofore made improvements upon and now uses and occupies a part of said sections sixteen and thirty-six such Indian may make his or her selection within the boundaries so prescribed so as to include his or her improvements, or in that part thereof now occupied and claimed by the Wichita and affiliated bands of Indians described as follows, viz: Commencing at a point in the middle of the main channel of the Washita River, where the ninety-eighth meridian of west longitude crosses the same, thence up the middle of the main channel of the said river to the line of ninety-eight degrees forty minutes west longitude, thence up said line of ninety-eight degrees forty minutes due north to the middle of the main channel of the main Canadian River, thence down the middle of the main Canadian River to where it crosses the ninety-eighth meridian; thence due south to the place of beginning.

"It is further agreed that wherever in said reservation any Indian, entitled to take lands in severalty hereunder, has made improvements and now uses and occupies a part of the land embracing such improvements, such Indian shall have the undisputed right to make his or her selection within the area above provided for allotments so as to include his or her said improvements.

ARTICLE III.

Selections in severalty by Indians.

ARTICLE IV.

Classification of land. Selections.

School, etc., sections.

Selections on lands now occupied.

School, etc., sections.

"It is further agreed that sections sixteen and thirty-six in each Congressional township in said reservation shall not become subject to homestead entry, but shall be held by the United States and finally sold for public school purposes. It is hereby further agreed that wherever in said reservation any religious society or other organization is now occupying any portion of said reservation for religious or educational work among the Indian the land so occupied may be allotted and confirmed to such society or organization; not, however, to exceed one hundred and sixty acres of land to any one society or organization so long as the same shall be so occupied and used, and such land shall not be subject to homestead entry.

Article V.

## "Article V.

Time for selections.

"All allotments hereunder shall be selected within ninety days from the ratification of this agreement by the Congress of the United States, provided the Secretary of the Interior, in his discretion, may extend the the time for making such selection, and should any Indian entitled to allotments hereunder fail or refuse to make his or her selection of land in that time, then the allotting agent in charge of the work of making such allotments shall, within the next thirty days after said time, make allotments to such Indians, which shall have the same force and effect as if the selection were made by the Indian.

Article VI.

## "Article VI.

Trust titles for allottees.

When said allotments of land shall have been selected and taken as aforesaid, and approved by the Secretary of the Interior, the titles thereto shall be held in trust for the allottees, respectively, for the period of twenty-five years, in the manner and to the extent provided for in the act of Congress entitled 'An act to provide for the allotment of land in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and the Territories over the Indians, and for other purposes,' approved February eighth, eighteen hundred and eighty-seven; and at the expiration of said period of twenty-five years the titles thereto shall be conveyed in fee simple to the allottees, or their heirs, free from all incumbrances.

Vol. 24, p. 388.

Article VII.

## "Article VII.

Payment for lands ceded.

"As a further and only additional consideration for the cession of territory and relinquishment of title, claim, and interest in and to lands as aforesaid the United States agrees to pay to the Cheyenne and Arapahoe tribes of Indians one million and five hundred thousand dollars as follows: Two hundred and fifty thousand dollars in cash, to be distributed per capita among the members of said tribes within sixty days after this agreement shall be ratified by the Congress of the United States; two hundred and fifty thousand to be paid out for said Indians under the direction of the Secretary of the Interior, and the remaining one million dollars to be retained in the Treasury of the United States placed to the credit of the said Indians, and, while so retained, to draw five per centum interest per annum, to be paid to said Indians per capita annually.

Distribution.

Annuities.

Nothing herein contained shall be held to affect in anyway any annuities due said Indians under existing laws, agreements, or treaties.

Article VIII.

## "Article VIII.

Confirmation of allotments.

"It is further agreed that wherever in said reservation any member of either of said tribes has in pursuance of any laws or under

any rules or regulations of the Interior Department, taken an allotment, such an allotment, at the option of the allottee, shall be confirmed and governed by all the conditions attached to allotments taken under this agreement.

### "ARTICLE IX.

ARTICLE IX.

"This agreement shall have effect whenever it shall be ratified by the Congress of the United States.

Effect.

"In witness whereof the said Commissioners on the part of the United States have hereunto set their hands, and the undersigned members of said tribes, for themselves and their tribes, set their hands the day and year first above written.

Signatures.

"DAVID H. JEROME,
"ALFRED M. WILSON,
"WARREN G. SAYRE,
         "Commissioners."

Left Hand, his x mark, and five hundred and sixty-four others.

SEC. 14. That for the purpose of making the allotments provided for in said agreement, including the pay and expenses of the necessary special agent or agents hereby authorized to be appointed by the President for the purpose, and the necessary resurveys, there be, and hereby is, appropriated, out of any money in the Treasury not otherwise appropriated, the sum of fifteen thousand dollars, or so much thereof as may be necessary.

Expenses of allotments.

SEC. 15. That for the purpose of carrying the provisions of foregoing agreement into effect there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, the sum of one million five hundred thousand dollars, of which amount the sum of one million dollars shall be placed in the Treasury to the credit of the Cheyenne and Arapahoe Indians, parties to the foregoing agreement, to bear interest at the rate of five per centum per annum, which interest shall be paid to them per capita annually; the balance of five hundred thousand dollars to be expended as provided for in article seven of said agreement, to be immediately available.

Amount placed to credit of Indians in trust.

And the sum of two million nine hundred and ninety-one thousand four hundred and fifty dollars be, and the same is hereby, appropriated out of any money in the Treasury not otherwise appropriated, to pay the Choctaw and Chickasaw Nations of Indians for all the right, title, interest, and claim which said nations of Indians may have in, and to certain lands now occupied by the Cheyenne and Arapahoe Indians under executive order; said lands lying south of the Canadian River, and now occupied by the said Cheyenne and Arapahoe Indians, said lands have been ceded in trust by article three of the treaty between the United States and said Choctaw and Chickasaw Nations of Indians, which was concluded April twenty-eighth, eighteen hundred and sixty-six, and proclaimed on the tenth day of August of the same year, and whereof there remains, after deducting allotments as provided by said agreement, a residue ascertained by survey to contain two million three hundred and ninety-three thousand one hundred and sixty acres; three-fourths of this appropriation to be paid to such person or persons as are or shall be duly authorized by the laws of said Choctaw Nation to receive the same, at such time and in such sums as directed and required by the legislative authority of said Choctaw Nation, and one-fourth of this appropriation to be paid to such person or persons as are or shall be duly authorized by the laws of said Chickasaw Nation to receive the same, at such times and in such sums as directed and required by the legislative authority of said Chickasaw Nation;

Payment to Choctaws and Chickasaws for interest in lands occupied by Cheyennes and Arapahoes.

Vol. 14, p. 769.

Division of payment.

STAT L—VOL XXVI——65

**1026**      FIFTY-FIRST CONGRESS. Sess. II. Ch. 543. 1891.

Immediately available. this appropriation to be immediately available and to become operative upon the execution by the duly appointed delegates of said respective nations specially authorized thereto by law of releases and conveyances to the United States of all the right, title, interest, and claim of said respective nations of Indians in and to said land (not including Grier County, which is now in dispute) in manner and form satisfactory the President of the United States; and said re-

Indian title extinguished. leases and conveyances, when fully executed and delivered, shall operate to extinguish all claim of every kind and character of said Choctaw and Chickasaw Nations of Indians in and to the tract of country to which said releases and conveyances shall apply.

Lands opened to homestead settlement only. SEC. 16. That whenever any of the lands acquired by either of the three foregoing agreements respecting lands in the Indian or Oklahoma Territory shall by operation of law or proclamation of the President of the United States be open to settlement they shall be

R.S., sec. 2301, p. 421. disposed of to actual settlers only, under the provisions of the homestead and town site laws (except section twenty-three hundred and one of the Revised States of the United States which shall not

Proviso. apply): *Provided, however,* That each settler, on said lands shall before making a final proof and receiving a certificate of entry, pay

Additional payment. to the United States for the land so taken by him, in addition to the fees provided by law, and within five years from the date of the first original entry, the sum of one dollar and fifty cents per acre, one-half of which shall be paid within two years; But the rights of honor-

Soldiers and sailors. R.S., sec. 2304-2305, p. 422. ably discharged Union soldiers and sailors as defined and described in Sections twenty-three hundred and four and twenty-three hundred and five of the Revised Statutes of the United States shall not be abridged except as to the sum to be paid as aforesaid, and all the lands in Oklahoma are hereby declared to be agricultural lands, and proof of their non-mineral character shall not be required as a condition precedent to final entry

Division into counties. Oklahoma lands. SEC. 17. That before any lands in Oklahoma are open to settlement it shall be the duty of the Secretary of the Interior to divide the same into counties which shall contain as near as possible not less than nine hundred square miles in each county. In establishing said county line the Secretary is hereby authorized to extend the lines of the counties already located so as to make the area of said counties equal, as near as may be, to the area of the counties

Election. provided for in this act. At the first election for county officers the people of each county may vote for a name for each county, and the name which receives the greatest number of votes shall be the name

Provisos. County seats. of such county: *Provided, further,* That as soon as the county lines are designated by the Secretary, he shall reserve not to exceed one-half section of land in each county to be located near the center of

R.S., secs. 2387, 2388, p. 437. said county, for county seat purposes to be entered under sections twenty-three hundred and eighty-seven and twenty-three and eighty-eight of the Revised Statutes: *Provided,* That in addition to the jurisdiction granted to the probate courts and the judges thereof in Oklahoma Territory by Legislative enactments which enactments are hereby ratified, the Probate Judges of said Territory are hereby granted such jurisdiction in town site matters and under such regulations as are provided by the laws of the State of Kansas.

Lease of school lands. SEC. 18. That the school lands reserved in the Territory of Oklahoma by this and former acts of Congress may be leased for a period not exceeding three years for the benefit of the school fund of said Territory by the Governor thereof, under regulations to be prescribed by the Secretary of the Interior.

Agreement with Cœur d'Alene Indians ratified. SEC. 19. The following agreement entered into on the part of the United States by John V. Wright, Jared W. Daniels and Henry W. Andrews, Commissioners with the Cœur d'Alene Indians in Idaho Territory signed on the part of said Indians by Chief Andrew Seltice, and others which bears date March twenty-sixth, eighteen

hundred and eighty-seven, and now on file in the Interior Department, is hereby accepted, ratified, and confirmed and is in the following words, to-wit:

### AGREEMENT WITH CŒUR D'ALENE.

Agreement.

*Post,* p. 1030.

This agreement made pursuant to an item in the act of Congress entitled "An act making appropriations for the current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the year ending June thirtieth, eighteen hundred and eighty-seven, and for other purposes," approved May fifteenth, eighteen hundred and eighty-six, by John V. Wright, Jared W. Daniels, and Henry W. Andrews, duly appointed commissioners on the part of the United States and the Cœur d'Alene tribe of Indians now residing on the Cœur d'Alene Reservation, in the Territory of Idaho, by their chiefs, headmen, and other male adults, whose names are hereunto subscribed, they being duly authorized to act in the premises, witnesseth:

### ARTICLE 1.

ARTICLE 1.

Preamble.

Whereas said Cœur d'Alene Indians were formerly possessed of a large and valuable tract of land lying in the Territories of Washington, Idaho, and Montana, and whereas said Indians have never ceded the same to the United States, but the same, with the exception of the present Cœur d'Alene Reservation, is held by the United States and settlers and owners deriving title from the United States, and whereas said Indians have received no compensation for said land from the United States: Therefore,

### ARTICLE 2.

ARTICLE 2.

Lands ceded.

For the consideration hereinafter stated the said Cœur d'Alene Indians hereby cede, grant, relinquish, and quitclaim to the United States all right, title, and claim which they now have, or ever had, to all lands in said Territories and elsewhere, except the portion of land within the boundaries of their present reservation in the Territory of Idaho, known as the Cœur d'Alene Reservation.

### ARTICLE 3.

ARTICLE 3.

Consent to settlement of Spokanes.

The said Cœur d'Alene Indians agree and consent that the Upper and Middle bands of Spokane Indians residing in and around Spokane Falls, in the Territory of Washington, may be removed to the Cœur d'Alene Reservation and settled thereon in permanent homes on the terms and conditions contained in an agreement made and entered into by and between John V. Wright, Jared W. Daniels, and Henry W. Andrews, commissioners on the part of the United States and said Spokane Indians, concluded on the fifteenth day of March, eighteen hundred and eighty-seven, at Spokane Falls, in the Territory of Washington.

### ARTICLE 4.

ARTICLE 4.

Consent to settlement of Calespels and other Indians.

And it is further agreed that the tribe or band of Indians known as Calespels, now residing in the Calespel Valley, Washington Territory, and any other bands of non-reservation Indians now belonging to the Colville Indian Agency, may be removed to the Cœur d'Alene Reservation by the United States, on such terms as may be mutually agreed on by the United States and any such tribes or bands.