**Attachment P**

BEFORE THE

INDIAN CLAIMS COMMISSION

CHEYENNE-ARAPAHO TRIBES OF INDIANS )
OF OKLAHOMA, suing on its own behalf )
and as representative of the )
CONFEDERATED TRIBES OF CHEYENNE AND )
ARAPAHO INDIANS OF THE UPPER )          DOCKET NOS.
ARKANSAS, also known as the SOUTHERN )
CHEYENNE AND ARAPAHO TRIBES OF )          329 - 329-A
INDIANS, and on behalf of the )
CHEYENNE AND ARAPAHO TRIBES OF INDIANS, )

                    Petitioner, )

        v. )

THE UNITED STATES OF AMERICA, )

                   Defendant, )

SEVERED PETITION

(Claims under The Executive Order of August
10, 1869 (1 Kapp. 840-1) and the Act of
March 3, 1891, 26 Stat. 989 - See Appendix F &
J., Docket 329.)

WILLIAM HOWARD PAYNE
Attorney of Record for Petitioner
1086 National Press Building
Washington 4, D. C.
Telephone: EXecutive 3-8268

Filed: November 25, 1958

BEFORE THE

INDIAN CLAIMS COMMISSION

CHEYENNE-ARAPAHO TRIBES OF INDIANS OF ) 
OKLAHOMA, suing on its own behalf and ) 
as representative of the CONFEDERATED ) 
TRIBES OF CHEYENNE AND ARAPAHO ) 
INDIANS OF THE UPPER ARKANSAS, also ) 
known as the SOUTHERN CHEYENNE AND ) 
ARAPAHO TRIBES OF INDIANS, and on ) 
behalf of the CHEYENNE AND ARAPAHO )     DOCKET NOS.
TRIBES OF INDIANS, ) 
                              )     329 - 329-A
                 Petitioner, )

           v. )

THE UNITED STATES OF AMERICA, )

                 Defendant, )

SEVERED PETITION

      (Claims under The Executive Order of August
      10, 1869 (1 Kapp. 840-1) and the Act of
      March 3, 1891, 26 Stat. 989 - See Appendix F &
      J, Docket 329)

      COMES NOW Petitioner the CHEYENNE-ARAPAHO TRIBES OF

INDIANS OF OKLAHOMA, by their attorney of record, WILLIAM

HOWARD PAYNE  and for their Petition respectfully show the
following:
      1.  Pettioner is an identifiable tribe, band, or group

of American Indians known and recognized as hereinafter

set forth.

      Petitioner, THE CHEYENNE-ARAPAHO TRIBES OF INDIANS OF

OKLAHOMA, is an organized tribe of Indians recognized by

the Secretary of the Interior.  It is here suing on its own

- 2 -

behalf, and on behalf of the CONFEDERATED TRIBES OF
CHEYENNE AND ARAPAHO INDIANS OF THE UPPER ARKANSAS RIVER, also
known as the SOUTHERN CHEYENNE AND ARAPAHO TRIBES OF INDIANS,
of whom petitioner is the factual and legal successor, and,
as set out in Count I, (See Petition Docket 329) on the
relation of the CHEYENNE AND ARAPAHO TRIBES OF INDIANS, of
which petitioner is a member tribe.

2.  Petitioner files this petition under and pursuant
to the Act of August 13, 1946 (60 Stat. 1049) and asserts
the claims herein under Section 2 of that Act.

3.  There is no suit now pending in the Court of Claims
or in the Supreme Court of the United States upon or in-
volving the claims herein presented or any part thereof.

4.  Petitioner is  and always has been the absolute
owner  of the claims alleged herein, either jointly or
severally, and no person other than petitioner  has ever had
any interest therein.  No assignment or transfer of the
claims alleged in this petition, nor of any part or interest
therein, has been made.  Petitioner has : not been paid
for the claims herein made,nor for any part thereof, and is
justly entitled to recover upon the claims made herein
from the United States after the allowance of all proper
credits and set-offs.

5.  No action in relation to the claims herein asserted
has been taken by Congress or by any department of the
Government or in any judicial proceeding, except as follows:

- 3 -

(a)   Defendant has entered into certain treaties
and agreements, and issued certain orders, and passed certain
laws, as follows:

>            Treaty of September 17, 1851, commonly
> known as the Fort Laramie Treaty (2 Kapp.
> 594); Treaty of February 18, 1861 (12 Stat.
> 1163); Treaty of October 14, 1865 (14 Stat.
> 703); Treaty of October 28, 1867 (15 Stat.
> 593); Executive Order of August 10, 1869
> (1 Kapp 840-1); Executive Order of April 18,
> 1882 (1 Kapp. 1047), amended by Executive
> Order of January 17, 1883 (1 Kapp. 843);
> Agreement of October 19, 1872, confirmed
> by Agreement of June 4, 1891, ratified by
> Act of March 2, 1895 (28 Stat. 876); Executive
> Order of July 17, 1883 (1 Kapp. 842); Act of
> March 3, 1891, ratifying an Agreement of
> October 1890 (26 Stat. 989, 1022); all of
> which are set out with particularity in the
> various counts of petition Docket No. 329.

(NOTE:   Text of the above citations is fully set forth in
the Appendix of Petition in Docket 329 as Appendix
A, through J, $J_1$ and $J_2$ , Respectively)

(b)   Under acts of June 24, 1926 (44 Stat. 764)
and March 29, 1928 (45 Stat. 380) amending a Sioux juris-
dictional Act of June 3, 1920 (41 Stat. 738),to permit the
Arapahoe and Cheyenne Tribes of Indians, residing in the
State of Wyoming, Montana, and Oklahoma to intervene in the
Sioux suit, the said Indians filed two petitions in the
Court of Claims:   (1)  No. C-531, filed April 19, 1928, and
(2) No. K-103, filed March 28, 1929.  Subsequently the
attorney for the said petitioners died and the actions
were never prosecuted to judgment; on May 3, 1937  and
January 6, 1941, respectively, the two petitions were
dismissed without adjudication.

- 4 -

6. At all times mentioned in this petition, defendant was the guardian and trustee of the property and affairs of the petitioners, subject to a high degree of fiduciary obligation and required to deal fairly and honorably with them as to their property and property rights.

7. At the time of the transactions with defendant set forth herein, the chiefs, headmen and members of petitioners' tribes were uneducated and ignorant in the ways of the white man, his treaties and land values, and were induced by mistake, or duress or unfair dealings, to enter into such transactions as they did and cede their lands as they did.

8. EXPULSION OF PETITIONER FROM ITS LANDS.

(a) In violation of its obligation under Article 3 of the Treaty of 1861, defendant failed to protect petitioner in the use and enjoyment of the reservation set aside by said treaty, and on November 29, 1864 defendant by its Army, without provocation, while the Indians were at peace and under the pledge of protection, attacked a village of Southern Arapahoes and Cheyennes at Sand Creek and indiscriminately slaughtered defenseless men, women and children, and destroyed their property. The said Southern Arapahoes and Cheyennes were generally forced to flee to the south beyond petitioner's territory, for safety.

(b) In and about the same time, or thereafter and before 1868, by the continuance of the acts alleged (in paragraph 12, Docket 329) and by the fear excited  by the

- 5 -

said Sand Creek massacre, many of petitioner's people, in-
cluding a portion of the Northern Cheyennes and Arapahoes,
were driven from petitioner's land by defendant.

    9.  EXECUTIVE ORDER OF AUGUST 10, 1869 (see Appendix F).

    Pursuant to Article 2 of the Treaty of October 14,
1865 (14 Stat. 703), and on August 10, 1869, the President
designated a reservation for petitioner located in what is
now known as the State of Oklahoma and South of the
Reservation described in the Treaty of October 28, 1867,
SUPRA, said reservation, according to reports of the General
Land Office, comprising 5,138,560 acres.  Petitioner there-
after took occupancy and possession of said reservation and
is now in individual and tribal occupancy and possession of
a portion of same.

    (a)  Notwithstanding the said Executive Order of
1869, on or about October 19, 1872, by agreement, confirmed
by agreement by and between defendant and the Wichita
and affiliated bands of Indians in Oklahoma Territory dated
the fourth day of June 1891, and ratified by the Act of
Congress of March 2, 1895 (28 Stat. 876; See Appendix G),
defendant set apart a reservation for the Wichita and
affiliated bands of Indians, wholly within petitioners'
reservation confirmed by aforesaid Executive Order, com-
prising 732,800 acres, and described as follows:

- 6 -

"Commencing at a point in the middle of the
main channel of the Washita River, where the
ninety-eighth meridian of west longitude crosses
the same, thence up the middle of the main chan-
nel of said river to the line of 98° 40' west longitude,
thence     on said line of 98° 40', due north to
the middle of the channel of the main Canadian
River, thence down the middle of said main Cana-
dian River to where it crosses the ninety-eighth
meridian, thence due south to the place of
beginning."

Wherefore, petitioner has a right to recover for
deprivation of just compensation, or the fair and reasonable
value of the lands thus taken in excess of $1.50 per acre
and a further right to recover for the fair and reasonable
rental value from October 19, 1872.

(b)  Notwithstanding the said Executive Order of
August 10, 1869, and on or about July 17, 1883, the President
ordered the withdrawal of an area of 9,493 acres from said
reservation for the establishment of the Fort Reno Military
Reserve (See Executive Order of July 17, 1883 ( I Kapp.,
842-43) Appendix H).  No compensation was stipulated nor
paid to petitioner.  Petitioner understood that the lands of
the Fort Reno Military Reserve would be returned to its
use and benefit when no longer used for military purposes or
that same were to be relinquished by the military when
required by the Secretary of the Interior for petioner's
purposes.  Wherefore, petitioner asserts claim for the
reasonable value of the use of said lands by the defendant
from the date July 17, 1883, reasonable and fair damages for
the failure of the Secretary of the Interior to require the

- 7 -

return of said lands to the use and benefit of petitioners;
and pray for the exercise of its powers in equity by the
Indian Claims Commission to set aside, or recommend the
setting aside the jurisdiction of the Department of
Agriculture conferred by the Act of April 21, 1948 (Public
Law 494, 80th Congress; See Appendix I), in said lands, and
for such other and further relief as may be deemed meet and
proper.

10. THE AGREEMENT OF OCTOBER 1890, BY AND BETWEEN
DEFENDANT AND THE CHEYENNE AND ARAPAHO TRIBES OF INDIANS, IN
THE INDIAN TERRITORY ( I KAPP. 415; RATIFIED ACT OF MARCH
3, 1891; 26 Stat. 989; See Appendix J). Said Agreement in
Articles I and II thereof purported to relinquish petitioner's
claims, right and title to 5,184,640 acres of land defined
in the Treaty of October 28, 1867, Supra, and to 5,138,560
acres of land defined in the Executive Order of August 10,
1869, Supra, and to approximately 2,300,000 (total 12,623,200)
acres of land described and located as follows:

> Beginning at a point where the 100° of west longi-
> tude crosses the 37th parallel; thence east on said
> 37th parallel to the Cimarron River; thence down
> the middle of the said Cimarron River to the north
> boundary of the country ceded to the United States
> by the treaty of June 14, 1866, with the Creek
> Nation of Indians; thence west directly to the
> 100° of west longitude; thence north on said 100°
> of west longitude to the place of beginning.

as well as claims to other lands therein defined. Said
Agreement further provided for individual allotment of 160

- 8 -

acres of land, subject to certain restrictions contained in
Articles III, IV, V, VI, and VIII thereof, to each of
petitioner's members, and fuether provided in Article VII
thereof for payment to petitioner the amount of $1,500,000.
Subsequent to the Act of March 3, 1891, supra, petitioner's
Executive Order Reservation lands (EO Aug. 10, 1869, supra)
were disposed of (I Kapp., 1030) as follows:

| Disposition | | No. Acres |
|---|---|---|
| (a) | Open to public settlement ........ | 3,500,562 |
| (b) | Allotted in severalty to C & A's... | 529,682 |
| (c) | Reserved to Wichita Tribe.......... | 732,800 |
| (d) | Reserved for public schools........ | 231,829 |
| (e) | Reserved for military purposes..... | 32,344 |
| (f) | Reserved for highways, roads, etc... | 111,343 |

(Item (f) in above tabulation derived by subtracting
sum of other items from total acreage.)

(a)  Wholly within and upon the lands purportedly
ceded by petitioners by the Agreement of 1890 (Supra) the
President by EXECUTIVE ORDER OF APRIL 18, 1882 (I Kapp.
1047), and JANUARY 17, 1883 ( I Kapp. 843; SEE APPENDIX -
J, 1 and Appendix - J2, respectively), withdrew 40,320 acres
thereof for the establishment of the Fort Supply Military
Reserve.  The said Executive Orders, inter alia, provided

> "* * * That whenever any portion of the lands
> set-apart for this post may be required by the
> Secretary of the Interior for Indian purposes the
> same shall be relinquished by the military, upon
> notice to that effect to the Secretary of War * * *."

- 9 -

Wherefore, petitioners assert claim for just compensation for or the reasonable value of the use of said lands by the defendant from the date of taking and reasonable and fair damages for the failure of the Secretary of the Interior to require relinquishment by the military for the use and benefit of petitioners.

(b) Petitioner claims that compensation for such lands purportedly ceded by the agreement of 1890, supra, was not in excess of one or two cents per acre and that any such compensation as may have been paid by defendant was not just, fair nor reasonable but was, in fact unconscionable and further that it was the duty of defendant's represent- atives in negotions of the said Agreement of 1890 to free themselves of an intent to drive a bargain and consummate only a just and fair settlement with the distressingly poor, hungry, uneducated and dependent petitioners.

(c) Petitioners claim damages for the failure of the defendant to retain the sum of one million dollars ($1,000,000) in the Treasury of the United States in trust at interest of five per centum (5%) per annum as provided in Article VII of the Agreement of 1890 (supra) thereby depriving petitioners of subsequent per capita payments of fifty-thousand dollars ($50,000) annually and for depletion and dissipation of said trust fund in an amount as will be shown by the evidence.

- 10 -

(d)  Petitioner claims damages for dealings not
fair and honorable in that defendant failed to exempt the
appropriation of funds provided in Sec. 15 of the Act of
March 3, 1891, supra, from the payment of depredation claims
thus, without cause, treating petitioner differently in this
respect from that accorded to other Indian tribes.  Where-
fore, petitioner asserts claims for money paid out of
aforesaid appropriation for settlement of depredation claims
in an amount to be shown by the evidence.

(e)  In the alternative, petitioner claims that
the reservation lands defined in Article 2 of the Treaty of
October 28, 1867, supra, were not relinquished by the
Agreement of October 1890, supra, for the reason that
Article 12 of said treaty required the signatures of at
least three-fourths of all the adult male Indians occupying
or interested in the same before a future cession could be
valid.  The Agreement of 1890, supra, was negotiated with
petitioners alone and the Northern Cheyenne and the
Northern Arapaho Indians were not a party to it.  Petitioners
allege that the required number of signatures of male
members of its own tribes were not secured to the Agreement
of 1890, and that no signatures, nor three-fourths thereof,
of the aforesaid northern tribes were affixed thereto and
therefore said Agreement of 1890 is invalid to cede said

- 11 -

lands and of no binding effect and that if the Agreement
of 1890 were revised on the ground of fraud, duress, un-
conscionable consideration, mutual or unilateral mistake,
petitioner is entitled to fair and reasonable value of
said lands in excess of $1.50 per acre on the basis of
fair and honorable dealings.

NOTE:   (Appendix references in this paragraph refer to
        those contained in Docket No. 329).

11.  FAILURE TO ACCOUNT.  At all times mentioned here-
in, the books of account and all other records pertaining
to all money and financial transactions of, for, and with
petitioner, and property and transactions **therein other**
than moneys have been in the exclusive possession and
control of defendant.

(a)  Moneys and goods have been due petitioner
under the treaties and agreements recited herein, and under
all appropriation Acts pursuant thereto.

(b)  Proceeds of property of petitioner or of
rents or other income therefrom have been payable to or
collected by defendant, or by it dealt with and disposed of.

(c)  At all times referred to herein, defendant
has been under a duty to pay interest on funds of petitioner
in accordance with the provisions of law.  Alternatively, de-
fendant has at all times been under a duty to pay to or
for the account and behalf of petitioner, interest on any
and all sums of money in the hands of defendant which it

- 12 -

retained for its own uses and purposes, whether by way of interest or principal. Alternatively, defendant at all times has been under a duty, in paying out moneys of petitioner held by it, to pay any sum or sums from the least productive funds or property of petitioner before proceeding to pay money from funds or property of greater productivity.

(d) At all times referred to herein, defendant has been under a duty as guardian and trustee of petitioner and the property of petitioner promptly and providently to invest funds of petitioner coming into the hands of defendant and to reinvest the same, and any rents, issues or profits thereof.

(e) Upon information and belief, petitioner alleges that defendant from time to time has collected or received, or in the exercise of its fiduciary duties ought to have collected or received, various property, including money, for or on behalf of petitioner, or defendant itself has become liable to pay moneys to or for or on behalf of petitioner. Defendant has failed to account for its management, handling and disposition of the said moneys and properties. As a result, petitioner has been damaged by having been deprived of the amount of money or value of other property, together with interest thereon, which may be shown to be owing to petitioner upon a proper accounting in accordance with the fiduciary duties and the liabilities herein set forth.

- 13 -

12.  PRAYER FOR RELIEF.  Wherefore, petitioner prays that defendant make a full and complete accounting and that petitioner be awarded judgment in the amount shown to be due under such an accounting; that petitioner be awarded judgment (with alternatives as set forth) for just compensation for, or the fair and reasonable value of, lands, or interests therein, or of the use and occupancy thereof, taken or otherwise acquired by defendant, and for losses and damages suffered by virtue of defendant's violations of treaties and agreements and principles of fair honorable dealings, less the allowance of proper set-offs; and that petitioner be awarded such other relief as to the Commission may seem proper.

/s/ William Howard Payne
WILLIAM HOWARD PAYNE
Attorney of Record for
Petitioner, Cheyenne-Arapaho Tribes
of Indians of Oklahoma,
1086 National Press Building,
Washington 4, D. C.
Telephone:  EXecutive 3-8268

## CERTIFICATE OF SERVICE

I hereby certify that 15 copies of the within and foregoing Severed Petition was served on Defendant by delivering same to John L. Sullivan, Esquire, Indian Claims Section, Lands Division, U. S. Department of Justice, Washington 25, D. C., this 25 day of November, A.D., 1958.

WILLIAM HOWARD PAYNE
Attorney for Petitioner

2/20/59

# Before the Indian Claims Commission

———

Docket No. 329–A

———

CHEYENNE-ARAPAHO TRIBES OF INDIANS OF OKLAHOMA, SUING ON ITS OWN BEHALF AND AS REPRESENTATIVE OF THE CONFEDERATED TRIBES OF CHEYENNE AND ARAPAHO INDIANS OF THE UPPER ARKANSAS, ALSO KNOWN AS THE SOUTHERN CHEYENNE AND ARAPAHO TRIBES OF INDIANS, AND ON BEHALF OF THE CHEYENNE AND ARAPAHO TRIBES OF INDIANS, PETITIONER

*v.*

THE UNITED STATES OF AMERICA, DEFENDANT

———

**ANSWER**

Comes now the defendant by its Assistant Attorney General and for its answer herein alleges and states:

FIRST DEFENSE

1. The petition fails to state a claim upon which relief can be granted.

SECOND DEFENSE

2. Defendant denies paragraph 1, except that it admits that the Cheyenne Tribe of Indians and the Arapaho Tribe of Indians of Oklahoma are identifiable tribes, bands or groups of American Indians.

3. Defendant admits paragraphs 2 and 3.

496082—59                    (1)

2

4. Answering paragraph 4, defendant denies that petitioner is justly entitled to recover from the defendant upon the claims set forth in the petition. Defendant alleges it does not have sufficient information concerning the other allegations of paragraph 4 and puts petitioner to the proof thereof.

5. Defendant denies paragraph 5.

6. Answering paragraph 6, defendant denies that at any time material herein a fiduciary relationship existed between petitioner and defendant. Defendant alleges that in all of its dealings with petitioner it has dealt fairly and honorably.

7. Defendant denies paragraph 7.

8. Answering paragraph 8, defendant admits and alleges that on November 29, 1864, in an attempt to put an end to murders and depredations committed by certain bands of Cheyennes, Sioux, Kiowas and Arapaho Indians an attack was made upon a village of Arapahoes and Cheyennes at or near Sand Creek, Colorado. Defendant further alleges that, although said attack was not instigated or carried out by defendant, reparations for injuries caused thereby were provided for and paid by defendant pursuant to a treaty of October 14, 1865 (14 Stat. 703). All other allegations of paragraph 8 are denied.

9. (a) Answering paragraph 9, defendant alleges that on August 10, 1869, the President approved a recommendation by the Department of the Interior that the reservation of the Cheyenne and Arapaho Indians be changed from that designated in the treaty of October 28, 1867, to a location on the North fork

3

of the Canadian River in what is now the State of Oklahoma. Answering paragraph 9(a), defendant admits and alleges that on or about October 19, 1872, it entered into an agreement with the Wichita and affiliated bands of Indians in the Indian territory.

(b) Answering paragraph 9(b), defendant admits that on or about July 17 1883, the President by Executive Order declared and set apart out of the lands referred to in the Executive Order of August 10, 1869, 9,439 acres as a military reservation for the post of Fort Reno as shown by appendix "H" of the petition in Docket 329.

(c) All other allegations of paragraph 9 are denied.

10. (a) Answering paragraph 10, defendant admits and alleges that in October 1890, it entered into an agreement with the Cheyenne and Arapaho Tribes of Indians and that said agreement was ratified by Congress on March 3, 1891 (26 Stat. 989), and that subsequent thereto the former reservation lands were disposed of as alleged in said paragraph.

(b) Answering paragraph 10(a), defendant admits and alleges that by Executive Orders of April 18, 1882 (1 Kapp. 1047) and January 17, 1883 (1 Kapp. 843), 40,320 acres of the lands formerly part of the August 10, 1869, Executive Order reserve were set aside for the establishment of the Fort Supply Military Reserve with the provisions for relinquishment thereof by the military as set out in said paragraph 10(a). All other allegations of paragraphs 10(a), (b), (c), (d), and (e) are denied.

11. Answering paragraph 11, defendant alleges that

4

defendant, since the commencement of this action, has rendered to petitioner a true and full account of all money and financial transactions between petitioner and defendant as referred to in paragraph 11 of the petition. That the written report of such transactions as compiled by the General Accounting Office has been delivered to the Attorney for petitioner and filed in Dockets 329 and 348 as petitioners' Exhibit No. 114. Otherwise the allegations of paragraph 11 are denied.

### THIRD DEFENSE

12. Defendant further alleges that from time to time, although under no obligation to do so, it spent large sums of public money for support, maintenance and education of petitioner. That in addition to the above items the defendant has from time to time, although under no obligation to do so, expended on behalf of petitioner various sums of money out of gratuity appropriations, the exact amount of which is not known to defendant at this time and which will be subsequently set out by an amendment hereto under Rule 12 if it shall be determined that the defendant herein is liable to the petitioner in any amount.

13. The defendant, while at all times asserting that petitioner is entitled to recover nothing under the claims as set forth in the petition, further alleges that if any sum should be found due by this Commission in favor of the petitioner, said petitioner is not entitled to any interest thereon.

5

Wherefore, defendant having fully answered the petition prays that the petition be dismissed and that petitioner recover nothing from the defendant.

PERRY W. MORTON,
*Assistant Attorney General.*

JOHN D. SULLIVAN,
*Attorney.*

I hereby certify that on the *12th* day of February 1959 ten (10) copies of the above and foregoing answer were mailed to the attorney for the petitioner, William Howard Payne, National Press Building, Washington 4, D.C.

JOHN D. SULLIVAN,
*Attorney.*

U. S. GOVERNMENT PRINTING OFFICE: 1959