Attachment  W-2

**56 Stat. 21 (1942)**

<u>**Senate**</u>:

**SERIAL-SET-ID:** 10546 S.rp.856

**TITLE:** Cheyenne-Arapaho Indians, Oklahoma, vesting title to certain lands; and providing for refund of income taxes erroneously paid by certain Indians.

**DESCRIPTIVE-TITLE:** Setting aside lands in Oklahoma for Cheyenne-Arapaho Tribes of Indians, etc.

**DOCUMENT-DATE:** December 4, 1941

**AUTHOR:** Elmer Thomas (1876-1965), Democratic Senator from OK .

**COMMITTEE:** Committee on Indian Affairs. Senate

**DOC-NO:** S.rp.856

**SERIAL-VOLUME:** 10546 **CONGRESS-SESSION:** 77-1 (1941-1942) **SESSIONAL-VOLUME:** 4

**BILL-NO:** 77 H.R.5095 **PUB-LAW-NO:** 77 PL 419 **STATUTES-AT-LARGE:** 56 Stat. 21, Chap: 24.

**LENGTH:** 4 pp.
**SUBJECTS:** Arapaho Indians; Cheyenne Indians; Indian lands; Oklahoma
**COLLECTION:** LexisNexis U.S. Serial Set Digital Collection

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**House of Representatives**</u>:

**SERIAL-SET-ID:** 10555 H.rp.896

**TITLE:** Cheyenne-Arapaho Indians, Oklahoma -- Set aside certain lands.

**DESCRIPTIVE-TITLE:** Setting aside lands in Oklahoma for Cheyenne-Arapaho Tribes of Indians

**DOCUMENT-DATE:** July 3, 1941

**AUTHOR:** Will Rogers (1898-1983), Democratic Representative from OK.

**COMMITTEE:** Committee of the Whole House. House; Committee on Indian Affairs. House

**DOC-NO:** H.rp.896

**SERIAL-VOLUME:** 10555 **CONGRESS-SESSION:** 77-1 (1941-1942) **SESSIONAL-VOLUME:** 4

**BILL-NO:** 77 H.R.5095 **PUB-LAW-NO:** 77 PL 419 **STATUTES-AT-LARGE:** 56 Stat. 21, Chap: 24.

**LENGTH:** 2 pp.
**SUBJECTS:** Arapaho Indians; Cheyenne Indians; Indian lands; Oklahoma
**COLLECTION:** LexisNexis U.S. Serial Set Digital Collection

of Sacramento, State of California, and forming a part of the right-of-way of said Central Pacific Railway Company, granted by the Government of the United States of America by an Act of Congress approved July 1, 1862, entitled "An Act to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the Government the use of the same for postal, military, and other purposes" (12 Stat. L. 489), and by said Act as amended by Act of Congress approved July 2, 1864, entitled "An Act to amend an Act entitled 'An Act to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the Government the use of the same for postal, military, and other purposes', approved July 1, 1862" (13 Stat. L. 356), are hereby legalized, validated, and confirmed with the same force and effect as if the land involved therein had been held at the time of such conveyances by the corporations making the same under absolute fee-simple title.

The conveyances, recorded in the office of county recorder of San Joaquin County, California, in book of official records, which are hereby legalized, validated, and confirmed, are as follows:

1. February 13, 1940: Margaret Gieseke; volume 669, page 473.
2. February 13, 1940: John B. Coughlan; volume 676, page 277.
3. February 13, 1940: Frank Ward; volume 669, page 474.
4. February 13, 1940: Henry Meiburg and Erna Meiburg; volume 669, page 476.
5. February 13, 1940: Frank Penny, volume 676, page 275.

The conveyance, recorded in the office of the county recorder of Sacramento County, California, which is hereby legalized, validated, and confirmed, is as follows:

March 17, 1931: Nellie M. Kearns; volume 340, page 465: *Provided*, That such legalization, validation, and confirmation shall not in any instance diminish said right-of-way to a width less than fifty feet on either side of the center of the main track or tracks of said Central Pacific Railway Company as now established and maintained: *Provided further*, That nothing herein contained is intended or shall be construed to legalize, validate, or confirm any rights, titles, or interests based upon or arising out of adverse possession, prescription, or abandonment, and not confirmed by conveyance heretofore made by Central Pacific Railway Company and its lessee, Southern Pacific Company: *And provided further*, That there shall be reserved to the United States all oil, coal, or other minerals in the land, and the right to prospect for, mine, and remove the same under the applicable mineral land laws.

*Proviso.*
Width of right-of-way.

Rights based on adverse possession, etc.

Mineral reservation.

Approved, January 27, 1942.

---

[CHAPTER 24]

AN ACT

To set aside certain lands in Oklahoma for the Cheyenne-Arapaho Tribes of Indians; and to carry out certain obligations to certain enrolled Indians under tribal agreement.

January 29, 1942
[H. R. 5095]
[Public Law 419]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That title to the following-described lands is hereby vested in the United States in trust for the Cheyenne-Arapaho Tribes of Oklahoma; and said lands shall be subject to all provisions of existing law applicable generally to Indian reservations:

Cheyenne-Arapaho Indians, Okla.
Lands set aside for use of.

Description.

In township 14 north, range 20 west of the Indian meridian; the southwest quarter and northeast quarter of section 29; southeast quarter section 30; northeast quarter of section 31; and all of section 32.

In township 18 north, range 13 west of the Indian meridian; the north half and southwest quarter of section 5; all of section 6; in township 19 north, range 13 west of the Indian meridian; southwest quarter of section 20, except those portions thereof situated below an elevation of one thousand six hundred and forty-two feet above mean sea level; all of section 29, except lot 3, south half southeast quarter, northwest quarter southeast quarter, and except also all those portions of lots 1, 2, 4, 5, and 6 and northeast quarter northeast quarter and west half northwest quarter and southeast quarter northwest quarter and southwest quarter situated below an elevation of one thousand six hundred and forty-two feet above mean sea level; southeast quarter and south half northeast quarter of section 30, except those portions thereof situated below an elevation of one thousand six hundred and forty-two feet above mean sea level; east half of section 31, except those portions thereof lying below an elevation of one thousand six hundred and forty-two feet above mean sea level. All of section 32 except the northeast quarter and north half southeast quarter and a strip one hundred feet wide in the south half northwest quarter, being fifty feet on each side of the following-described center line;

Beginning at a point on the west boundary of said section two thousand four hundred and ninety feet south of the northwest corner thereof, thence easterly parallel to the latitudinal quarter section line two thousand six hundred and forty-three feet to the meridional quarter section line, and except also that part of the north half of the northwest quarter situated below an elevation of one thousand six hundred and forty-two feet above mean sea level.

*Recovery of taxes paid by certain Indians.*

SEC. 2. That any person duly enrolled as a member of an Indian tribe who received in pursuance of a tribal treaty or agreement with the United States an allotment of land which, by the terms of said treaty or agreement was exempted from taxation, restricted against alienation, or which by the terms of any Act of Congress was continued under the supervision of the United States during the minority of such allottee, and from which land the restrictions have or have not been removed, and any such enrolled member of an Indian tribe having restricted money in the custody and control of the United States, prior to April 26, 1931, and who was required or permitted to pay any Federal income tax on such lands or on the rents, royalties, or other gains arising from such lands during such restricted or tax-exempt period or on income from such restricted funds while in the custody or control of the United States, or on income from any allotment during the minority of the allottee, or any such person who has been erroneously or illegally taxed by reason of not having claimed or received the benefit of any deductions or exemptions permitted by law, and who would be entitled under this or previous Acts or rulings of the Treasury Department in similar Indian cases to a refund of the taxes so illegally or erroneously collected, but for the fact that he failed to file a claim for such refund within the time prescribed by law, shall be allowed two years

*Filing of claim.*

after the approval of this Act within which to file such claim, and if otherwise entitled thereto he may recover such taxes in the same manner and to the same extent as if such claims for refund had been theretofore duly filed as required by law, it not being the policy of the Government to invoke or plead a statute of limitations to escape the obligations of agreement solemnly entered into with its Indian wards, or prior to April 26, 1931, to exact for its own use and benefit an income tax from them while their property continued under the supervision of the United States and/or during the minority of any

*Provisos.*
*Heirs permitted to file claims.*

such allottee: *Provided, however,* That in the case of the death of a member of an Indian tribe his heirs who succeeded to his allotment

of lands be permitted to file claims and recover refunds in the same manner as duly enrolled member of an Indian tribe: *Provided further*, That in the case of the death of any enrolled member of an Indian Tribe any such illegal taxes paid by him or on his account may in like manner be claimed and recovered by the person or persons who would have received such money had it constituted a part of his estate at the time of his death.

That all Acts and parts of Acts in conflict herewith are modified for the purpose, and only for the purpose, of carrying into effect the provisions hereof.

Approved, January 29, 1942.

*Other claimants.*

[CHAPTER 25]

AN ACT

Authorizing appropriations for the United States Navy, additional shipbuilding and ship-repair facilities, and for other purposes.

January 29, 1942
[H. R. 6304]
[Public Law 420]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That there is hereby authorized to be appropriated, out of any money in the Treasury not otherwise appropriated, $500,000,000 for essential equipment and facilities at either private or naval establishments for building or equipping any complete naval vessel or portion thereof heretofore or hereafter authorized; $275,000,000 for essential equipment and facilities at either private or public plants for repairing, altering, or converting any vessel operated by the Navy or being prepared for naval use, of which $50,000,000 shall be available for essential equipment, tools, and facilities at such plants for the repair, alteration, and upkeep of ordnance material; and $70,000,000 for tools, equipment, and facilities for the manufacture or production of ordnance material, munitions, and armor at either private or public plants.

Navy.
Appropriation authorized for shipbuilding and equipment.
*Post*, p. 81.

Sec. 2. The authority herein granted shall include the authority to acquire lands at such locations as the Secretary of the Navy may deem best suited to the purpose, erect or extend buildings, acquire the necessary machinery and equipment, and in private establishments provide plant protection installations, and shall be in addition to all authority heretofore granted for these purposes. The Secretary of the Navy is hereby directed to report to Congress within six months from the enactment of this Act a statement of all land acquired under this section showing the acreage, location, and the price of each such acquisition.

Acquisition of lands, construction of buildings, etc.

Report to Congress.

Approved, January 29, 1942.

[CHAPTER 26]

AN ACT

To further the national defense and security by checking speculative and excessive price rises, price dislocations, and inflationary tendencies, and for other purposes.

January 30, 1942
[H. R. 5990]
[Public Law 421]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Emergency Price Control Act of 1942.
*Post*, p. 767.

TITLE I—GENERAL PROVISIONS AND AUTHORITY

PURPOSES; TIME LIMIT; APPLICABILITY

Section 1. (a) It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize

*Purposes.*

Calendar No. 888

| 77TH CONGRESS<br>*1st Session* | SENATE | REPORT<br>No. 856 |

---

# CHEYENNE-ARAPAHO INDIANS, OKLAHOMA, VESTING TITLE TO CERTAIN LANDS; AND PROVIDING FOR REFUND OF INCOME TAXES ERRONEOUSLY PAID BY CERTAIN INDIANS

---

DECEMBER 4, 1941.—Ordered to be printed

---

Mr. THOMAS of Oklahoma, from the Committee on Indian Affairs, submitted the following

# REPORT

[To accompany H. R. 5095]

The Committee on Indian Affairs, to whom was referred the bill (H. R. 5095) providing for the vesting of title in the United States in trust for the Cheyenne-Arapaho Tribes of Oklahoma, to certain lands situated in the State of Oklahoma, having considered the same, report thereon with the recommendation that it do pass with the following amendments:

On page 3, after line 4, add another section reading as follows:

SEC. 2. That any person duly enrolled as a member of an Indian tribe who received in pursuance of a tribal treaty or agreement with the United States an allotment of land which, by the terms of said treaty or agreement was exempted from taxation, restricted against alienation, or which by the terms of any Act of Congress was continued under the supervision of the United States during the minority of such allottee, and from which land the restrictions have or have not been removed, and any such enrolled member of an Indian tribe having restricted money in the custody and control of the United States, prior to April 26, 1931, and who was required or permitted to pay any Federal income tax on such lands or on the rents, royalties, or other gains arising from such lands during such restricted or tax-exempt period or on income from such restricted funds while in the custody or control of the United States, or on income from any allotment during the minority of the allottee, or any such person who has been erroneously or illegally taxed by reason of not having claimed or received the benefit of any deductions or exemptions permitted by law, and who would be entitled under this or previous Acts or rulings of the Treasury Department in similar Indian cases to a refund of the taxes so illegally or erroneously collected, but for the fact that he failed to file a claim for such refund within the time prescribed by law, shall be allowed two years after the approval of this Act within which to file such claim, and if otherwise entitled thereto he may recover such taxes in the same manner and to the same extent as if such claims for refund had been theretofore duly filed as required by law, it not being the policy of the Government to invoke or plead a statute of limitations to escape the obligations of agreement solemnly entered into with its Indian wards, or prior to April 26, 1931, to exact for its own use and benefit an income tax from them while their property continued under the

supervision of the United States and/or during the minority of any such allottee: *Provided, however,* That in the case of the death of a member of an Indian tribe his heirs who succeeded to his allotment of lands be permitted to file claims and recover refunds in the same manner as duly enrolled member of an Indian tribe: *Provided further,* That in the case of the death of any enrolled member of an Indian tribe any such illegal taxes paid by him or on his account may in like manner be claimed and recovered by the person or persons who would have received such money had it constituted a part of his estate at the time of his death.

That all Acts and parts of Acts in conflict herewith are modified for the purpose, and only for the purpose, of carrying into effect the provisions hereof.

This bill (H. R. 5095) has been considered by the Committee on Indian Affairs of the House of Representatives; on July 3, 1941, that committee submitted its report (H. Rept. No. 896) to the House recommending its passage, and on August 4, 1941, it passed the House.

The subject matter of the amendment herein recommended is contained in the text of S. 1202, which has heretofore been referred to your committee for consideration. A bill (S. 2192, 76th Cong.) identical with that of S. 1202 (77th Cong.) was considered by your committee during the Seventy-sixth Congress. On November 12, 1941, the Secretary of the Interior submitted his report on said S. 1202 recommending its passage.

Said House Report No. 896 and the letter of the Secretary of the Interior, dated November 12, 1941, are hereto attached and made a part of this report, as follows:

[H. Rept. No. 896, 77th Cong., 1st sess.]

The Committee on Indian Affairs, to whom was referred the bill (H. R. 5095) to set aside certain lands in Oklahoma for the Cheyenne-Arapaho Tribes of Indians, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

This proposed legislation was suggested by the Acting Secretary of the Interior in a communication dated June 14, 1941, addressed to the Speaker of the House of Representatives. Thereafter a bill, H. R. 5095, was introduced embodying the proposed legislation submitted by the Acting Secretary of the Interior. The bill was referred to your committee for consideration.

The communication of the Acting Secretary of the Interior, above referred to, follows:

THE SECRETARY OF THE INTERIOR,
*Washington, June 14, 1941.*

The SPEAKER OF THE HOUSE OF REPRESENTATIVES.

SIR: There is enclosed a draft of proposed legislation to set aside certain lands in Oklahoma for the Cheyenne-Arapaho Tribes of Indians.

For the reasons hereinafter set forth, I recommend that this proposed legislation receive favorable consideration.

Under the terms of an agreement of October 1890, ratified by the act of March 3, 1891 (26 Stat. 1022–1026), the Cheyenne and Arapaho Indians ceded, relinquished, and transferred to the United States all of their lands in Indian Territory. In consideration for the cession, a payment of $1,500,000 was made to the tribe and each member of the tribe over the age of 18 years received an allotment in severalty. Some of the ceded lands were reserved for Indian agency, school, and other purposes, including the cantonment subagency reserve; and by Executive order of July 12, 1895, certain lands were set aside as the Red Moon School reserve. The lands included in the two reserves are described as follows:

### CANTONMENT RESERVE

NW¼NE¼SW¼ sec. 5; all of sec. 6 in T. 18 N., R. 13 W.; SW¼ sec. 20; all of sec. 20; SE¼S¼NE¼ sec. 30; E½ sec. 31; all of sec. 32 in T. 19 N., R. 13 W., of the Indian meridian, Oklahoma.

RED MOON RESERVE

SW¼NE¼ sec. 29; SE¼ sec. 30; NE¼ sec. 31; all of sec. 32 in T. 14 N., R. 20 W., of the Indian meridian, Oklahoma.

The above lands are no longer being used for the purposes for which reserved, and the Indians have asked that these lands be restored to the tribe for the benefit of its members who are landless. The exceptions noted in the enclosed draft cover lands that are being acquired by the War Department in connection with the Canton Dam and Reservoir project.

Under the agreement of 1890 the Indians received only about 80 cents an acre for the land they ceded. By the act of June 17, 1910 (36 Stat. 533), Congress authorized the Secretary of the Interior to sell, at not less than $5 per acre, any lands formerly within the Cheyenne and Arapaho Reservation reserved for school and agency purposes, and directed that the proceeds from such sales be deposited in the Treasury to the credit of the Indians. By this act, Congress recognized the fact that the Indians have an equity in such lands because their value is so greatly in excess of the price which the Indians originally received at the time of their cession.

The bill, if enacted, will leave the legal title to the lands in the United States, but will impose a trust thereon in favor of the Cheyenne and Arapaho Indians, thus giving the land the same status as other tribal Indian lands.

The Bureau of the Budget has advised me that there is no objection to the presentation of this proposed legislation to the Congress.

Very truly yours,

(Signed)  E. K. BURLEW,
*Acting Secretary of the Interior.*

---

THE SECRETARY OF THE INTERIOR,
*Washington, November 12, 1941.*

Hon. ELMER THOMAS,
*Chairman, Committee on Indian Affairs, United States Senate.*

MY DEAR SENATOR THOMAS: Reference is made to your request for a report on S. 1202, a bill to carry out certain obligations to certain enrolled Indians under tribal agreement.

I recommend the enactment of this measure.

The purpose of the bill is to permit for a period of 2 years after its enactment the filing of claims for the refund of Federal income taxes that may have been erroneously paid by or in behalf of certain Indians. In some cases at least, the filing of such claims may be barred by the holding of the United States Circuit Court of Appeals for the Tenth Circuit in the case of *United States* v. *Richards* (27 Fed. (2d) 284), certiorari denied (49 Sup. Ct. 29).

Many Indians who received allotments of land pursuant to tribal treaties or agreements with the United States were guaranteed exemption from taxation of their allotments by the terms of the treaties or agreements under which such allotments were made. It has been held that such exemption is a vested contractual property right which cannot legally be set aside and denied to the Indians under the fifth amendment to our Constitution (*Choate* v. *Trapp*, 224 U. S. 665). In such cases, therefore, the lands were legally tax-exempt in the hands of the Indian owners for the entire period specified in the agreements, even though the restrictions were removed prior to the expiration of the statutory period. It follows that during the period of exemption from taxation the income derived from such land was also nontaxable (*Pollock* v. *Farmers Loan and Trust Company*, 157 U. S. 429; 158 U. S. 601).

The largest group of Indians who would be affected by the enactment of S. 1202 are members of the Five Civilized Tribes in Oklahoma. Section 1 of the act of May 27, 1908 (35 Stat. 312), provided for the automatic removal of restrictions from the lands of a large number of allottees of those tribes, including minors. After the removal of restrictions, certain taxes were erroneously collected from some of the Indians on income received from lands that were tax-exempt.

As to allotted minors of the Five Civilized Tribes, the courts have held that section 2 of the act of May 27, 1908, continues their lands under Federal restrictions during the minority of the allottee (*Truskett* v. *Closser*, 236 U. S. 223). The income from their lands, therefore, was not subject to taxation, according to an opinion of the Attorney General rendered March 15, 1924 (34 Ops. Atty. Gen. 275), as well as the above-mentioned decision in the case of *Pollock* v. *Farmers Loan and Trust Company.*

The proposed legislation is in the interest of the Indians and is similar to legislation that has been enacted by the Congress during prior sessions. See Senate Joint Resolution 163, Seventy-first Congress, approved February 14, 1933 (47 Stat. 807). It is estimated that there are approximately 350 cases which would now merit consideration if the present bill should become law.

A similar measure, S. 2192, Seventy-sixth Congress, first session, was reported to the Senate on May 3, 1939, and passed that body May 4, 1939. That bill, however, failed of final enactment.

The Bureau of the Budget has advised me that the enactment of this legislation would not be in accord with the program of the President.

Sincerely yours,

HAROLD L. ICKES,
*Secretary of the Interior.*

Amend the title so as to read:

A bill to set aside certain lands in Oklahoma for the Cheyenne-Arapaho Tribes of Indians; and to carry out certain obligations to certain enrolled Indians under tribal agreement.

O

| 77th Congress<br>1st Session | HOUSE OF REPRESENTATIVES | Report<br>No. 896 |
|---|---|---|

## CHEYENNE-ARAPAHO INDIANS, OKLAHOMA—SET ASIDE CERTAIN LANDS

July 3, 1941.—Committed to the Committee of the Whole House on the state of the Union and ordered to be printed

Mr. Rogers of Oklahoma, from the Committee on Indian Affairs, submitted the following

## REPORT

[To accompany H. R. 5095]

The Committee on Indian Affairs, to whom was referred the bill (H. R. 5095) to set aside certain lands in Oklahoma for the Cheyenne-Arapaho Tribes of Indians, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

This proposed legislation was suggested by the Acting Secretary of the Interior in a communication dated June 14, 1941, addressed to the Speaker of the House of Representatives. Thereafter a bill, H. R. 5095, was introduced embodying the proposed legislation submitted by the Acting Secretary of the Interior. The bill was referred to your committee for consideration.

The communication of the Acting Secretary of the Interior, above referred to, follows:

THE SECRETARY OF THE INTERIOR,
*Washington, June 14, 1941.*

The SPEAKER OF THE HOUSE OF REPRESENTATIVES.

SIR: There is enclosed a draft of proposed legislation to set aside certain lands in Oklahoma for the Cheyenne-Arapaho Tribes of Indians.

For the reasons hereinafter set forth, I recommend that this proposed legislation receive favorable consideration.

Under the terms of an agreement of October 1890, ratified by the act of March 3, 1891 (26 Stat. 1022–1026), the Cheyenne and Arapaho Indians ceded, relinquished, and transferred to the United States all of their lands in Indian Territory. In consideration for the cession, a payment of $1,500,000 was made to the tribe and each member of the tribe over the age of 18 years received an allotment in severalty. Some of the ceded lands were reserved for Indian agency, school,

2   CHEYENNE-ARAPAHO INDIAN LANDS, OKLAHOMA

and other purposes, including the cantonment subagency reserve; and by Executive order of July 12, 1895, certain lands were set aside as the Red Moon School reserve. The lands included in the two reserves are described as follows:

### CANTONMENT RESERVE

NW¼NE¼SW¼ section 5; all of section 6 in T. 18 N., R. 13 W.; SW¼ section 20; all of section 29; SE¼S¼NE¼ section 30; E½ section 31; all of section 32 in T. 19 N., R. 13 W. of the Indian meridian, Oklahoma.

### RED MOON RESERVE

SW¼NE¼ section 29; SE¼ section 30; NE¼ section 31; all of section 32 in T. 14 N., R. 20 W., of the Indian meridian, Oklahoma.

The above lands are no longer being used for the purposes for which reserved, and the Indians have asked that these lands be restored to the tribe for the benefit of its members who are landless. The exceptions noted in the enclosed draft cover lands that are being acquired by the War Department in connection with the Canton Dam and Reservoir project.

Under the agreement of 1890 the Indians received only about 80 cents an acre for the land they ceded. By the act of June 17, 1910 (36 Stat. 533), Congress authorized the Secretary of the Interior to sell, at not less than $5 per acre, any lands formerly within the Cheyenne and Arapaho Reservation reserved for school and agency purposes, and directed that the proceeds from such sales be deposited in the Treasury to the credit of the Indians. By this act, Congress recognized the fact that the Indians have an equity in such lands because their value is so greatly in excess of the price which the Indians originally received at the time of their cession.

The bill, if enacted, will leave the legal title to the lands in the United States, but will impose a trust thereon in favor of the Cheyenne and Arapaho Indians, thus giving the land the same status as other tribal Indian lands.

The Bureau of the Budget has advised me that there is no objection to the presentation of this proposed legislation to the Congress.

Very truly yours,

(Signed)   E. K. BURLEW,
*Acting Secretary of the Interior.*

O