Attachment 2

Congress transferred the remaining Ft. Reno lands to the Department of Agriculture. Indeed, the Ft. Reno lands were not being used for "military purposes exclusively" (as the July 17, 1883 Executive Order described the original use) once Congress transferred 1,000 acres of Ft. Reno lands to the Bureau of Prisons in 1937. See e.g., Hopland Band of Pomo Indians v. United States, 855 F. 2d 1573, 1577 (Fed. Cir. 1988) (held that a cause of action "accrues" for statute of limitations purposes " . . . when all events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action").

    Interestingly, the archival GLO records concerning Oklahoma support the 1948 accrual date as well. Specifically, we refer to Volume 20 of the GLO Tract Books covering Oklahoma (See Attachment Q at Q-13 and Q-14) which contains a notation that the 1963 transfer of Ft. Reno lands to the Bureau of Prisons for the El Reno Reformatory by the Secretary's Public Land Order 3089 "revoked" the July 17, 1883 Executive Order with respect to the lands transferred. It follows that the 1937 transfer of 1,000 acres of the Ft. Reno lands to the Bureau of Prisons and the 1948 transfer of Ft. Reno lands to the Department of Agriculture must have **revoked** the 1883 Executive Order as to these transferred lands. Once the 1963 transfer occurred, the 1883 Executive Order became a nullity.[8/]

    Finally, a court will not even reach the issue of fraudulent concealment in situations where the court finds the plaintiff had notice of the defendant's action(s) giving rise to the alleged claim. Bender v. Rocky Mountain Drilling Associates, 648 F. Supp. 330, 335 (D.D.C. 1986). The Plaintiff had notice of its claim no later than 1948 when the of remaining Ft. Reno lands were transferred to Agriculture. The Solicitor's 1999 Opinion concludes the Plaintiff's

---

[8/] Public Land Order (PLO) was issued by the Secretary on May 12, 1963 (pursuant to authority delegated by Executive Order 10355 of May 26, 1952) and transferred 1,670 acres to the Bureau of Prisons. See Attachment O at 3. This 1,670 acres was taken out of the acreage transferred to Agriculture in 1948.

interest, of every kind and character, in and to" the lands encompassed within the external boundaries of the 1869 Executive Order Reservation with the only exception being the lands to be selected for allotment.[18]

In short, even if the court were to find that it has jurisdiction of over this lawsuit, this case must be dismissed for failure to state a claim upon which relief may be granted.[19]

## CONCLUSION

Defendants submit this case must be dismissed for lack of subject matter jurisdiction. The Plaintiff seeks to pursue the same claim in this court which it raised in its ICCA suit and for which it was paid in 1965. The court's limited resources should not be consumed by this suit. Having sought legislation to return the Ft. Reno lands to the Tribes' ownership in 1949, 1950, 1952 and 1997 - - <u>a 48-year period</u> - - Plaintiff knows full well that the proper forum for the resolution of the <u>present</u> Ft. Reno lands claim is Congress. The fact that there have been four failed Ft. Reno bills, while unfortunate from the Tribes' perspective, cannot justify Plaintiff's

---

[18] Even if the court were to reach the cession issue and find that the Ft. Reno lands were not ceded in 1891, it does not follow that the alleged beneficial interest <u>presently exists</u> because Volume 20 of the series of GLO Tract Books which cover Oklahoma contains a notation that the 1963 transfer (by Public Land Order 3089) of Ft. Reno lands "revoked" the 1883 Executive Order as to the acreage transferred. It follows that Congress' 1937 and 1948 transfers of Ft. Reno lands must have <u>revoked</u> the 1883 Executive Order as well as to the lands transferred. Thus, the three transfers operated so as to nullify the 1883 Executive Order and it cannot now serve as a basis for the Tribes' alleged <u>present</u> beneficial interest.

[19] Plaintiff argues that there are "genuine issues of material fact" with respect to whether the Government misled the Tribes as to possible future use of Ft. Reno by the Army after 1954. <u>See</u> Pl. Opp. at 10-11; Plaintiff's Statement Concerning Material Facts as to Which There Exists a Genuine Issue (Attachment 3 to Pl. Opp.). However, the Plaintiff does not allege the existence of genuine issues of material facts with respect to whether the Ft. Reno lands were ceded in 1891, or as to whether the Tribes were paid for their Ft. Reno claim in their ICCA suit. <u>Instead</u>, the plaintiff relies solely on the 1999 Solicitor's Opinion as to the matter of cession and payment for the Ft. Reno claim under the ICCA.