UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHEYENNE-ARAPAHO TRIBES OF OKLAHOMA,  )<br>  )<br>Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>UNITED STATES OF AMERICA, et al.  )<br>  )<br>Defendants.  )<br>  ) | Civil Action No. 06-519 (PLF) |

AFFIDAVIT OF RICHARD J. GRELLNER
IN SUPPORT OF PLAINTIFF TRIBES' RULE 56(f)
MOTION FOR CONTINUANCE TO PERMIT DISCOVERY

RICHARD J. GRELLNER hereby certifies that the following is true and correct and based on personal knowledge:

1. I am lead counsel for the Cheyenne Arapaho Tribes of Oklahoma in this litigation and submit this Affidavit in support of Plaintiff Tribes' Rule 56(f) Motion for Continuance to Permit Discovery.

2. As part of the effort to develop information relating to the Tribes' longstanding efforts to ensure that title in the lands of Fort Reno reverted to them once their use for military purposes (pursuant to the Executive Order of 1883 that took the lands from the Tribes) was at an end, I obtained the documents included in the record as Attachment 2 to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment ("Plaintiff's Opposition") (we shall furnish more legible "hard copies" of these important historical documents to the Court and opposing counsel, and apologize for any

oversight in this respect). They are relevant to this proceeding in several respects, and especially with respect to the Government's argument the Tribe has long been on notice of all the facts relating to their claimed reversionary interest in Fort Reno, beginning as early as 1948, when a jurisdictional transfer to the Department of Agriculture took place.

      3. Documents in Attachment 2 to Plaintiff's Opposition that the Government kept classified for more than fifty years show that at the time of the transfer the Army fully intended to make continued use of the lands for military purposes. This should give rise to a genuine issue whether any claimed reversionary interest could have been asserted in 1948, or at any time thereafter that the lands continues to be devoted to military purposes.

      4. The Tribes discovered only recently (via Government response to a FOIA request pending for several years) that, in agreements entered between the Army and Department of Agriculture in 1952 and 1954 (Attachments 2 and 3 to Plaintiff's Memorandum in Surreply) that also remained hidden from public view for more than fifty years, the lands continued to be designated in "standby status" for military purposes. Together with the fact these documents too were apparently classified under the authority of the National Security Act, they give rise to a genuine issue whether the Tribes' claimed reversionary interest has yet accrued for limitations purposes.

      5. Not only do these documents relate to whether and when any claimed reversionary interest accrued. In my view, together with documents that should be in the Government's possession that we have not yet obtained, they could relate to possible application of the doctrine of equitable estoppel as against the Government's assertion of limitations.

      6. We obtained the 1952 and 1954 agreements between the Army and Department of Agriculture pursuant to an FOIA request in which the Tribes sought all information concerning the nature and status of the Fort Reno lands from 1954 on, a request sufficient in scope to include transcripts of hearings conducted in El Reno, Oklahoma before several members of Congress over a period of several days in 1954. Accounts of the hearings appear in copies of newspaper articles of the time included in the record as Attachment 3 to Plaintiff's Opposition. The transcripts should be more readily available in discovery than they proved to pursuant to FOIA request, and could well shed light on representations made during the course of the hearings by Governmental representatives that obscured the actual nature and status of the Fort Reno lands. They could show that, while tribal members had no knowledge of the continuing military uses contemplated by the Army, Governmental representatives with knowledge nonetheless withheld this information from the Tribes.

      7. I respectfully submit that in circumstances that could well be unique in litigation under the Quiet Title Act, the Court should exercise its broad discretion under Rule 56(f) in favor of permitting some discovery to take place.

      I hereby certify under penalty of perjury that the foregoing Affidavit is true and correct to the best of my knowledge, information and belief.


Dated:   June 20, 2007          /s/
                                             RICHARD J. GRELLNER