**ATTACHMENT NO. 2**



# INTERIOR BOARD OF INDIAN APPEALS

Richard J. Grellner v. Anadarko Area Director, Bureau of Indian Affairs

35 IBIA 192 (09/25/2000)

Related Board cases:
    27 IBIA 244
    34 IBIA 144



# United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS
4015 WILSON BOULEVARD
ARLINGTON, VA 22203

| | |
|---|---|
| RICHARD J. GRELLNER, | : Order Affirming Decision |
|     Appellant | : |
| | : |
| v. | : |
| | : Docket No. IBIA 00-2-A |
| | : |
| ANADARKO AREA DIRECTOR, | : |
|   BUREAU OF INDIAN AFFAIRS, | : |
|     Appellee | : September 25, 2000 |

    This is an appeal from an August 18, 1999, decision of the Anadarko Area Director, Bureau of Indian Affairs (Area Director; BIA), concerning the payment of fees under an attorney contract between Richard J. Grellner (Appellant) and the Cheyenne-Arapaho Tribes of Oklahoma (Tribes). For the reasons discussed below, the Board affirms the Area Director's decision.

    Appellant and the Tribes entered into a Special Claims Attorney Contract (the contract) on April 14, 1995. The contract provided:

> It shall be the duty of [Appellant] to advise and represent the Tribes in connection with properly investigating, formulating, and pursuing, the claims of the Tribes against the United States, relating to recovery and development by the Tribes of certain lands and property situated in the state of Oklahoma, commonly known as the "Fort Reno Lands", and any associated claims.

Contract at 1.

    With regard to compensation, the contract provided for a combination of fees at an hourly rate and contingency fees. Under the hourly rate component, Appellant was to receive $50 per hour, with an annual limit of $50,000 absent the prior approval of BIA and the Tribes. The contingency fee was to be a percentage of the recovery made through litigation and was "to be paid out of non-trust assets of the Tribes or any settlement monies the tribe is paid as a result of the recovery efforts of Fort Reno." Id. at 3.

With regard to term, the contract provided:

> This contract is to run for a definite term of three years, * * * and may be terminated * * * by either the Tribes or [Appellant], for any reason by giving Thirty (30) days notice to the other party and the Secretary of the Interior or his authorized representative, and to the Area Director; and if the contract shall be so terminated, before resolution of any and all claims, [Appellant] shall receive such compensation as the Secretary of the Interior or his authorized representative may determine equitably to be due under this Agreement.

Id. at 4-5.

The contract was approved by the Superintendent, Concho Agency, BIA, on May 5, 1995. 1/ In her letter of the same date transmitting the approved contract to Appellant, the Superintendent stated: "The contract * * * shall be in effect for a period of three years beginning May 5, 1995, and ending May 4, 1998." Her approval notation, which she appended to the contract, recited the same beginning and ending dates.

By letter dated March 13, 1998, and received by Appellant on March 28, 1998, the Tribes provided him with 30 days notice of contract termination and asked him to submit a final invoice. During May 1998, Appellant submitted invoices to the Superintendent who forwarded them to the Tribes. However, Appellant and the Tribes were not able to agree on payment to Appellant.

On August 31, 1998, Appellant wrote to the Superintendent, asking her to make a determination under the contract's termination provision as to how much compensation was equitably due to him under the contract. He stated that he had received payment from the Tribes in the amount of $112,656. He attached an invoice in which he sought payment of $150,000 in attorney fees at the contract rate of $50 per hour; $75,000 in expenses; and an unspecified amount as "equitable payment due for contingency provision to be determined pursuant to equitable provision of the contract." Invoice attached to Aug. 31, 1998, Letter at 16.

After seeking and considering the views of the Tribes, the Superintendent issued a decision in which she analyzed Appellant's services to the Tribes under the eight factors listed in

---

1/ An earlier contract between Appellant and the Tribes was disapproved by the Area Director on Feb. 2, 1995. See Cheyenne-Arapaho Tribes v. Anadarko Area Director, 27 IBIA 244 (1995).

Rule 1.5(a) of the Oklahoma Rules of Professional Conduct, 2/ also taking into consideration Federal and Oklahoma case law concerning the reasonableness of attorney fees.

The Superintendent concluded that the Tribes had paid Appellant at least $124,656, an amount which "more than adequately compensates him for his performance and expenses under the contract." Superintendent's Jan. 5, 1999, decision at 5-6. She therefore declined to approve any further payment to Appellant.

Appellant appealed to the Area Director, asserting, inter alia, that he had not received $124,656 in payments from the Tribes but only $120,656 or $120,601. 3/ He also disagreed with the Superintendent's analysis on the merits.

The Area Director affirmed the Superintendent's decision on August 18, 1999, concluding, inter alia, that the result should be the same regardless of which figure was correct as to the payments already made by the Tribes.

Appellant appealed the Area Director's decision to the Board. 4/

---

2/ Rule 1.5(a) of the Oklahoma Rules of Professional Conduct provides:
"A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
"(3) the fee customarily charged in the locality for similar legal services;
"(4) the amount involved and the results obtained;
"(5) the time limitations imposed by the client or by the circumstances;
"(6) the nature and length of the professional relationship with the client;
"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
"(8) whether the fee is fixed or contingent."
Accord American Bar Association, Model Rules of Professional Conduct, Rule 1.5(a) (1983).

3/ On page 1 of his Statement of Reasons before the Area Director, Appellant stated that the Tribes had paid him $120,656. In Addendum 1 to the same Statement of Reasons, he stated that the Tribes had paid him $120,601.

4/ Prior to the Area Director's issuance of his Aug. 18, 1999, decision, Appellant filed an appeal with the Board under 25 C.F.R. § 2.8, "Appeal from inaction of official." That appeal was dismissed as moot on Oct. 20, 1999. Grellner v. Anadarko Area Director, 34 IBIA 144 (1999).

In her January 5, 1999, decision, the Superintendent found that her authority under the contract was discretionary and that, "[i]n determining what claims may be [paid] from accounts held in trust by the Department of the Interior, the BIA is bound by the trust responsibility of the United States toward the Indians for whom the funds are held." Id. at 2.

Appellant does not appear to dispute either of these findings. The Board concludes that the Superintendent was correct as to both.

The contract provides that, in the case of contract termination, Appellant "shall receive such compensation as the Secretary of the Interior or his authorized representative may determine equitably to be due under this Agreement." This language and, in particular, use of the word "may" in describing the Secretary's authority, indicates that the Secretary was to exercise discretion in this regard. See, e.g., Smith v. Acting Muskogee Area Director, 30 IBIA 104, 111 (1996); Muscogee (Creek) Nation v. Muskogee Area Director, 28 IBIA 24, 31 (1995). The Superintendent's January 5, 1999, decision was made in the exercise of authority granted in the contract and was thus discretionary.

It is well established that, in approving payment from funds held in trust, BIA must exercise its authority in accordance with the trust responsibility. E.g., Muscogee (Creek) Nation, 28 IBIA at 31, and cases cited therein. BIA's trust duty is toward the individual or tribe for whom the funds are held in trust. Shoshone-Bannock Tribal Credit Program v. Portland Area Director, 35 IBIA 110, 120 (2000). In this case, therefore, the Superintendent was called upon to exercise the discretionary authority set out in the contract in accordance with BIA's trust duty toward the Tribes.

The Area Director had full authority to review the Superintendent's exercise of discretion. His decision was itself issued in the exercise of BIA's discretionary authority. However, the Board has only limited jurisdiction over decisions made by BIA officials in the exercise of discretionary authority. 43 C.F.R. § 4.330(b)(2). 5/ The Board reviews BIA discretionary decisions to ensure compliance with all legal prerequisites to the exercise of discretion. It does not, however, substitute its judgment for BIA's. E.g., Town of Charlestown, Rhode Island v. Eastern Area Director, 35 IBIA 93, 96 (2000), and cases cited therein; Muscogee (Creek) Nation, 28 IBIA at 31. An appellant who challenges a BIA discretionary decision bears the burden of proving that BIA did not properly exercise its discretion. E.g., Town of Charlestown, 35 IBIA at 96, and cases cited therein.

---

5/ 43 CFR 4.330(b) provides: "Except as otherwise permitted by the Secretary or the Assistant Secretary - Indian Affairs by special delegation or request, the Board shall not adjudicate: * * * (2) Matters decided by the Bureau of Indian Affairs through exercise of its discretionary authority."

In this case, there were no regulations governing BIA's determination of the compensation equitably due to Appellant under the contract. Thus, strictly speaking, there were no "legal prerequisites" to the Superintendent's exercise of discretion. In the absence of regulations, the Superintendent based her decision on the rule governing the legal profession in Oklahoma with respect to the reasonableness of attorney fees. Appellant does not challenge the Superintendent's choice of the Oklahoma rule to guide her decision. Nor could he reasonably do so. As a member of the Oklahoma bar, he is bound by that rule.

The Board concludes that the Superintendent's reliance upon the Oklahoma rule was reasonable and appropriate in the circumstances.

Appellant disagreed with the Superintendent's initial analysis under the Oklahoma rule and disagrees with the Area Director's responses to his arguments concerning the Superintendent's analysis. As noted above, however, under the standard of review applicable here, the Board does not substitute its judgment for BIA's. Thus, even if the Board were to disagree with BIA's analysis, it would not matter.

Appellant's task was to show that BIA did not properly exercise its discretion. He has failed to do so here.

Therefore, pursuant to the authority delegated to the Board of Indian Appeals by the Secretary of the Interior, 43 C.F.R. § 4.1, the Area Director's August 18, 1999, decision is affirmed.

//original signed
Anita Vogt
Administrative Judge

//original signed
Kathryn A. Lynn
Chief Administrative Judge