UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHEYENNE-ARAPAHO TRIBES OF OKLAHOMA, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No. 06-519 (PLF) ) |
| UNITED STATES OF AMERICA, et al. | ) ) |
| Defendants. | ) ) ) |

### AFFIDAVIT OF RICHARD J. GRELLNER

RICHARD J. GRELLNER hereby certifies that the following is true and correct and based on personal knowledge:

1. I am lead counsel for the Cheyenne Arapaho Tribes of Oklahoma in this litigation and submit this Affidavit in connection with the Government's proposed Response to Plaintiff's Surreply.

2. The Government has introduced a decision of the Interior Board of Indian Appeals in a matter involving payments under an attorney contract I entered with the Tribes in 1995. See Richard J. Grellner v. Anadarko Area Director, Bureau of Indian Affairs, 35 IBIA 192 (2000) (Response to Plaintiff's Surreply, Attachment 2). Though the ostensible purpose is to show some lack of diligence on my part in obtaining information including transcripts of the hearings conducted in Oklahoma before several members of Congress in 1954, the information is so clearly **not** a matter of public record (among other things it is subject to a long pending FOIA request), it seems to me the actual motive is to cast me in a negative light as overreaching in the matter of

compensation from the Tribes.  The suggestion is entirely unfair, as even minimal inquiry should have revealed.

      3.  I started working for the Cheyenne Arapaho Tribes when I was fresh out of law school, and for me it was a particularly meaningful opportunity.  I am from Oklahoma, my ancestors arrived in the lands of the Cheyenne Arapaho Reservation before statehood, and I had long been aware of the Tribes' claim to Fort Reno, and their clear understanding it would revert to them when no longer needed for military purposes.  It was a privilege for me to become involved in their long struggle to recover lands of such historic significance for them.

      4.  The attorney contract with the Tribes called for compensation up to $50,000 annually at the rate of $50 an hour, and reimbursement of expenses, but over the period of several years I advanced more than $112,000 in expenses on the Tribes' behalf at the same I received very little compensation for services.

      5.  The reference in the IBIA decision to "payments from the Tribes in the amount of $112,656", 35 IBIA at 193 (Response to Plaintiff's Surreply, Attachment 2 at 4) is to <u>reimbursed expenses</u>, not payments for services. The total payments shown ("$120,656 or $120,601", 35 IBIA at 194) mean that compensation for my services constituted at most $8,000.

      I hereby certify under penalty of perjury that the foregoing Affidavit is true and correct to the best of my knowledge, information and belief.

Dated:   July 16, 2007          /s/_____
                                              RICHARD J. GRELLNER