UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHEYENNE-ARAPAHO TRIBES OF )
OKLAHOMA, )
 )
Plaintiff, )
 )          No. 06-519
 )          Judge Paul L. Friedman
v. )
 )
UNITED STATES OF AMERICA, et al., )
 )
Defendants. )

DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE THE
ATTACHED RESPONSE TO PLAINTIFF'S SURREPLY

**Introduction**

The plaintiff's opposition to Defendants' motion for leave to file a response to plaintiff's surreply is premised upon the Tribes' objections to the substance of the government's arguments therein, and makes only a brief reference to the reasons set forth in support of the motion for leave. For this reason, the Defendants address the substance of the plaintiff's response in their reply.

**ARGUMENT**

**I. DEFENDANTS HAVE ARTICULATED FOUR COMPELLING REASONS FOR THE COURT TO DENY PLAINTIFF'S RULE 56(f) MOTION.**

Defendants' Opposition to Plaintiff's Rule 56(f) Motion (filed July 2, 2007) sets out four compelling reasons for the Court to deny the Motion: (1) the issues to which the requested discovery would be addressed are moot or not material because the Tribes knew their

reversionary interest claim had accrued in 1949; (2) plaintiff did not meet its Rule 56(f) burden;

(3) plaintiff's "genuine factual issues" are not genuine issues of material fact; and (4) the Rule

56(f) motion was extremely untimely because it was filed on June 20, 2007 - - four and one-half

months after the Tribes' Opposition to Defendants' Motion to Dismiss was filed (on January 29,

2007), and that denial is warranted on this basis alone.  In Argument I of its Response, plaintiff

directly addresses the first argument only; arguably, it obliquely addresses the second and third

arguments and it completely ignores the fourth argument.[1]

   Plaintiff's essential response to the first argument is that the Tribes' former general

counsel and tribal attorney, William Howard Payne, was poorly informed about the use of Ft.

Reno when he testified on June 28, 1949, as follows: " * * * Fort Reno is no longer useful for

military purposes.  It has been in fact abandoned by the Army."  (emphasis added) [2] The Tribes

allege that in 1948 the "Army took steps to maintain its [Ft. Reno's] military status," (emphasis

supplied) and Mr. Payne did not know this.  (Pl. Resp. at 2, note 1).  However, plaintiff does not

---

[1] Perhaps the plaintiff intended the Grellner Affidavit (first attachment to Response) to be responsive to the second argument, but it is not. As the undersigned informed plaintiff's local counsel, John Racin, (in a telephone conversation), before he filed the motion for leave to file a response to plaintiff's surreply, the reference to the IBIA opinion was to establish the existence of the Special Claims Attorney Contract; the undersigned told Mr. Racin that he [the undersigned] was not attempting to address the merits of the IBIA decision. Indeed, for purposes of the second and fourth Rule 56(f) arguments, the Defendants' Opposition presumed that Mr. Grellner had acquired considerable familiarity with the history and background of the Ft. Reno claim. Moreover, this presumption is fully consistent with the following statement in Plaintiff's Motion for Richard J. Grellner to Appear Pro Hac Vice, filed October 27, 2006: "He [Richard Grellner] is very familiar with the complex factual history of the Cheyenne-Arapaho in the lands at issue."

[2] In their response to the plaintiffs' surreply, the Defendants inadvertently miscopied this statement when they stated that Mr. Payne testified: "It has in fact been abandoned by the Army."

explain this statement.  More importantly, the Court should not countenance the plaintiff's attempt to belittle this inconvenient testimony by the Tribes' former general counsel/tribal attorney - - testimony given 58 years ago.   Indeed, it is beyond dispute that Mr. Payne's testimony proves that he believed (and thus the Tribes necessarily believed) that their reversionary interest claim had accrued.  Plaintiff cannot plausibly contend, given the Payne testimony, that the plaintiff tribes could not have asserted their reversionary interest claim in June/July of 1949.  Finally, even if the plaintiff can prove that its reversionary interest claim has never accrued, then this lawsuit must be dismissed for lack of ripeness.  E.g., Texas v. United States, 523 U. S. 296, 300 (1998) (held that "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or may not occur at all.' ").

Plaintiff apparently makes an oblique response to the government's third argument in its "Second Supplemental Statement of Material Facts as to Which there is a Genuine Issue" (second attachment to Response).  This Supplemental Statement goes to the alleged distinction (in the 1958 Severed Petition in the ICCA suit) between the Tribes' Ft. Reno reversionary interest claim (para. 9(b) of the 1958 petition) and the claim that they had received "unconscionable consideration" for the lands ceded in 1891 (para. 10) (Pl. Resp. at 12).

Contrary to plaintiff's position, the reversionary interest and "unconscionable consideration" claims were not completely distinct, despite the argument in the Tribes' Response that the Tribes "regarded [the Ft. Reno lands] as outside the cession."  The two claims, as articulated in the 1958 severed petition (Attachment P to Defendants' Reply) (and these two claims were repeated verbatim in paragraphs 17(b) and 18 of the 1961 severed petition), instead overlapped and were inconsistent.  See Defendants' Reply at 30-31.  In addition, Paragraph 9(b)

3

(and the same is true of Paragraph No. 17(b) of the 1961 severed petition) does not explicitly state that the Ft. Reno lands were "outside" the scope of the 1891 cession, as the Tribes argue at page 5 of their Response. Third, plaintiff's own appraiser failed to deduct the acreage of the Ft. Reno lands (or any of the other "reserved" lands) from the total acreage of the 1869 Reservation (5,138,560 acres), but, instead, deducted only the 529,682 acres allotted to the Cheyenne-Arapaho Indians to arrive at the ceded acreage figure of 4,608,878 acres.[3] Thus, his historical appraisal report (Attachment H to Memorandum in support of Defendants' Motion to Dismiss) directly contradicts the plaintiff's position that the Ft. Reno lands were "outside" the cession. Finally, there was potentially a complete factual and legal overlap between the two claims. If the Indian Claims Commission were to find in Docket No. 329-A that the "reserved" lands (which included the Ft. Reno lands) had been part of the total amount of ceded acreage, then the legal premise for the reversionary interest claim - - that is, the Ft. Reno lands were not ceded in 1891 - - would be destroyed. This is precisely what happened when the Commission issued Finding Nos. 55 and 56 (16 Ind. Cl. Comm. at 163-164).

The plaintiff's oblique response also implicates the Defendants' jurisdictional argument based on Section 22(a) of the ICCA. Plaintiff's Response states that the Tribes "regarded [the Ft. Reno lands] as <u>outside</u> the 1891 cession." (emphasis supplied). We read this statement as plaintiff's concession that the issue of whether the Ft. Reno lands had been ceded in 1891 was a matter "involved in" its ICCA case. This concession compels the conclusion that Section 22(a)

---

[3]On p. 14 of Defendants' response to plaintiff's surreply (attached to Defendants' motion for leave to file, filed on July 2, 2007), Defendants state that both appraisers valued 4,406,878 ceded acres; this figure is in error. Defendants' Memorandum in support of their motion to dismiss gives the correct figure of 4,608,878 acres at page 6.

4

bars the current Ft. Reno claim because this current claim touches on one of the "matters involved in the controversy"- - that is, involved in the plaintiff's ICCA suit. [4/]

Finally, plaintiff makes no response to the government's untimeliness argument - - the fourth argument. We reiterate that untimeliness, by itself, is a sufficient basis for denying the Tribes' Rule 56(f) Motion.

## II.    PRECLUSION APPLIES HERE WHERE THE PARTIES AGREED TO BAR IN FUTURE ACTIONS THE ASSERTION OF ANY RIGHT, CLAIM OR DEMAND WITH RESPECT TO THE SUBJECT MATTER OF THE CLAIMS AND CONGRESS INTENDED A FULL DISCHARGE OF ALL CLAIMS TOUCHING ANY MATTERS INVOLVED IN THE CONTROVERSY

Plaintiff argues that the findings of the Commission that the "reserved" lands (which included Ft. Reno) were ceded in 1891 cannot bar the Tribes' quiet title claim as to the Ft. Reno lands based upon the decision in Arizona v. California, 530 U.S. 392 (2000). Plaintiff relies upon the general rule that "[s]ettlements ordinarily occasion no *issue preclusion* (sometimes called collateral estoppel), unless it is clear, as it is not here, that the parties intend their agreement to have such effect." (emphasis supplied).

Defendants submit that the "general rule" has no applicability here. Unlike this case, the Arizona v. California case involved non-mutual offensive collateral estoppel - - that is, collateral estoppel was asserted by the "State parties" which had not been parties in ICC Docket No. 320. Second, the parties to the Tribes' ICCA lawsuit clearly intended that the question of whether the "reserved" lands (which included Ft. Reno) had been ceded by the 1891 Agreement was to be resolved for all time, thereby falling within the exception noted in Arizona v. California to the

_____

[4/] This Supplemental Statement is primarily aimed at our collateral estoppel defense.

general rule.  See State ex rel. Martinez v. Kerr-McGee Corporation, 120 N. M. 118, 898 P. 2d

1256, 1260-1261 (Ct. App. N. Mex. 1995).  This intent is evident in the language of Paragraph

No. 2 of the Stipulation for Entry of Final Judgment filed in Docket Nos. 329-A and 329-B.

Paragraph No. 2 states, as follows:

> Entry of final judgment in said amount shall finally dispose of all rights, claims or
> demands which the petitioner has asserted or could have asserted with respect to the
> subject matter of those claims, and petitioner shall be barred thereby from asserting any
> such right, claim or demand against defendant in any future action.

See Attachment N to Memorandum in Support of Defendants' Motion to Dismiss at 1.  The

United States, of course, would not have agreed to settle ICC Docket No. 329-A (the 1869

Reservation case), if it had understood that the plaintiff Tribes would be free to file a future quiet

title suit against the United States with respect to any of the "reserved" lands (which included the

Ft. Reno lands) within the external boundaries of the 1869 Executive Order Reservation. Indeed,

by referring to the "subject matter of those claims," in Paragraph No.  2,  the parties plainly

intended to bar any  future claim against the United States the subject of which was the Ft. Reno

lands.  This language negates the Tribes' argument that the current Ft. Reno claim is different

from the Ft. Reno claim set out in the Tribes' 1958 and 1961 severed petitions.  In short, since the

subject matter of both claims is the Ft. Reno lands, the current claim is barred.

In order for the Commission to decide in ICC Docket No. 329-A whether the Tribes'

"unconscionable consideration" claim was meritorious (that is, whether the amount the United

States had paid the Tribes for the lands ceded in 1891 was so far below the fair market value of

these lands as of March 3, 1891 as to be deemed "unconscionable"), it was absolutely essential

for the Commission to first make a finding as to the number of acres which had been ceded.

6

Only then could it determine if the per acre consideration paid was so far below the per acre fair market value as to be "unconscionable" within the meaning of Clause (3) of Section 2 of the ICCA.

The court decisions which have given preclusive effect to prior determinations made by the Indian Claims Commission are largely based upon a theory of "statutory preclusion" - - that is, the passage of the ICCA created a "statutory method of preclusion." See Kerr-McGee, 898 P.2d at 1263; Kerr-McGee cites the Pend Oreille decision as an example of statutory preclusion. The application of statutory preclusion means that if the Commission found that a plaintiff tribe's title to a particular tract of land had been extinguished, then the Tribe could not thereafter assert that it still had title to said tract as against the United States. In other words, if a tribe was compensated under the ICCA for the loss of the very same land to which it now asserts title, or, in which it now claims a property interest, then statutory preclusion should be applied to the present claim.[5] Here, the plaintiff tribes assert a present reversionary interest in the Ft. Reno lands, even though the Commission found, in effect, that the "reserved" lands (of which the Ft. Reno lands were a part) had been ceded in 1891, and the Tribes were paid for the "reserved" lands by the $15 million award in favor of the Tribes entered in consolidated ICC Docket Nos. 329-A and 329-B.

Plaintiff argues that Arizona v. California distinguished United States v. Pend Oreille Pub. Util. Dist. No. 1, 926 F. 2d 1502 (9th Cir. 1991), and other ICCA cases cited by the defendant, because the Tribes' petitions in those cases " ' . . . claimed no continuing title,

---

[5] Again, the language of the 1891 Agreement was broad enough to encompass an interest in land.

choosing instead to seek compensation from the United States for the taking of their lands.' " (Pl
Resp Br. at 11, note 8). In fact, the plaintiff Tribes sought compensation for all lands ceded
under the 1891 Agreement from the Indians Claims Commission, and the settlement of the
Tribes' Docket No. 329-A and 329-B claims did not exempt any Ft . Reno lands (or any other
"reserved" lands) from that final resolution.

This settlement was the subject of a separate approval process where the Commission
made findings as to the amount of ceded land in issue, which acreage included the Ft. Reno
lands. Such findings were essential to give effect to Congress' language in Section 22(a) that
mandates finality. Section 22(a) provides as follows:

> "The payment of any claim, after its determination in accordance with this
> chapter [Act], shall be a full discharge of the United States of <u>all claims and demands
> touching any of the matters involved in the controversy</u>."

25 U.S.C. § 70u. (emphasis added). This is the statutory method of preclusion created by
Congress. The <u>Arizona v. California</u> opinion expressly states (530 U.S. at 417) that the Court
was not addressing the  "correctness" of this proposition which was articulated in the <u>Pend
Oreille</u> decision,[9/]

The Ft. Reno lands were, in fact, ceded by the 1891 Agreement and, therefore, the Tribes
cannot have a present beneficial interest in the Ft. Reno lands because the 1891 cession

---

[9/] There are also some crucial factual distinctions between <u>Arizona v. California</u> and the instant
case. First, the former case concerned the alleged loss of water rights, unlike the present suit.
Also, during the pendency of the Tribes' ICCA suit, the United States never changed its position
that the "reserved" lands had been ceded, unlike the situation in the Quechan Tribe's ICCA suit.
Between 1912 and 1999, Interior consistently took the position that the "reserved" lands had been
ceded. When the Leshy opinion took the opposite position in 1999, Interior did <u>not</u> issue a
Secretarial Order adopting the Leshy opinion, thereby changing the position of the <u>United States</u>
on the cession issue. In any event, the Leshy opinion was issued  34 years after the Tribes' ICCA
suit was concluded.

agreement encompassed not only the Tribes' title to the 1869 Reservation lands, but any interest they might have or allege in those lands. Even if the Ft. Reno lands had been "taken" by the 1883 Executive Order (as plaintiff contends), and were, as a result, in the government's possession, the crux of the plaintiff's current claim is that the same 1883 Order created a reversionary interest in these lands running to the Tribes. The 1891 cession agreement was sufficiently broad so as to encompass this presumed reversionary interest, the tribes' "unconscionable consideration"claim was made before the Commission, and the matter was resolved and compensation given for the "reserved" lands, which included the Ft. Reno lands. For the foregoing reasons, this case must be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

The plaintiff fails to refute Defendants' arguments in support of the denial of plaintiff's Rule 56(f) motion. For the reasons given, we reiterate that the doctrine of collateral estoppel is applicable here. Even if the Court were to decide the doctrine of collateral estoppel does not apply here, and, as a result, the Tribes are not bound by the Indian Claims Commission's Findings of Fact Nos. 55 and 56, the extensive historical documentation submitted by the Defendants, and the related legal arguments based thereon, taken together, compel the dismissal of this lawsuit with prejudice for failure to state a claim upon which relief may be granted.

Dated this 23rd day of July, 2007.

9

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General

s/ James M. Upton
JAMES M. UPTON
U.S. Department of Justice
Environment & Natural Resources Div.
Natural Resources Section
P.O. Box 663
Washington, D.C.   20044-0663
Ph. (202) 305-0482
Fax: (202) 305-0506
E-mail: james.upton@usdoj.gov

OF COUNSEL:

Maria Wiseman, Esq.
Office of the Solicitor
U.S. Department of the Interior
Main Bldg. - - Mail Stop 6456
1849 C  Street,  N.W.
Washington, D.C.   20240

James B. Snow, Esq.
Office of the General Counsel
U.S. Department of Agriculture
1400 Independence Avenue, S.W.
Washington, D.C.   20250

10