UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CHEYENNE-ARAPAHO TRIBES OF   )
OKLAHOMA,                    )
                             )
        Plaintiff,           )
                             )      No. 06-519
                             )      Judge Paul L. Friedman
        v.                   )
                             )
UNITED STATES, et al.,       )
                             )
        Defendant.           )
_____)

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ALTER
OR AMEND THE COURT'S SEPTEMBER 27, 2007 JUDGMENT**

Defendants vigorously oppose the Plaintiff's Motion to Alter or Amend the Court's September 27, 2007 Judgment for a multiplicity of reasons. Plaintiff seeks to have the Court strike footnote 3 at page 9 of the Opinion in which the Court holds that the "alternative ground" for its dismissal of this lawsuit is the loss of plaintiff's right to pursue its Fort Reno claim stemming from the 1965 final judgment entered in favor of the Tribes pursuant to a stipulated settlement of their Indian Claims Commission Act ("ICCA") claims in ICC Docket No. 329-A - - the claim that the Tribes received "unconscionable" consideration for the 1891 cession of their 1869 Reservation lands and the Ft. Reno lands claim. Plaintiff argues that inclusion of this footnote is " . . . devastating to [the] Tribes that for more than a century have maintained a continuing interest in the historic lands of Fort Reno." Pl. Memorandum at 1.

At the outset, it is important to note that the content of footnote 3, contrary to plaintiff's characterization, is not an isolated "reference" in the Opinion. Rather, the discussion at pages 3-4 and 8-9 of the Opinion concerning the relevant history of plaintiff's lawsuit under the ICCA in

which it expressly raised a pre-August 13, 1946 Ft. Reno lands claim, fully explains how the Court concluded there was an "alternative ground" for dismissal of the instant lawsuit. Furthermore, the detailed documentation in the record concerning the plaintiff's suit under the ICCA fully supports the "alternative ground" ruling. In sum, the plaintiff has not shown, and cannot show, that the Court has committed "clear error."

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' OPPOSITION**

**ARGUMENT**

**I. The Plaintiff's Rule 59(e) Motion in No Way Meets the Standards for the Relief Requested and, Therefore, the Motion Should be Denied.**

Rule 59(e) motions for reconsideration are constrained by their limited function of correcting manifest errors of law or fact or presenting newly discovered evidence or an intervening change in the law. Cosgrove v. Bartolotta, 150 F.3d 729, 732 (7th Cir. 1998). Reconsideration under Rule 59(e) is appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co., 139 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (quoting Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir.1990)).

The Tribes' arguments plainly do not fit within the confines of Rule 59(e). The Tribes make arguments that they plainly did make, or could have made earlier - - arguments which do exactly what Rule 59(e) does <u>not</u> allow.

> "A motion for reconsideration ... will not be lightly granted." Mobley v. Cont'l Cas. Co., 405 F. Supp. 2d 42, 45 (D.D.C.2005). Reconsideration is only appropriate when "the moving party shows new facts or clear errors of law which compel the court to change its prior position." Nat'l Ctr. for

> Mfg. Sci. v. Dep't of Def., 199 F.3d 507, 511 (D.C. Cir. 2000). See also Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C .Cir. 1996). Such motions "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." Niedermeier v. Office of Baucus, 153 F. Supp.2d 23, 28 (D.D.C.2001) . "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir.1996). See also Katten v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993).

Center For Public Integrity v. F.C.C. --- F. Supp.2d ----,  2007 WL 3027374, *1 (D.D.C., 2007). A motion for reconsideration cannot be used to introduce "new legal theories for the first time", or to "present new evidence that could have been adduced during the pendency of the original motion." Publishers Resource, Inc.  v. Walker Davis Publ., Inc., 762 F.2d 557, 561 (7th Cir.1985).

     Plaintiff's Rule 59(e) Motion is a **"rehash"** of arguments previously made to the Court. For example, the Tribes' argument at pages 2 to 5 of its Rule 59(e) Motion that the 1965 settlement of  the plaintiff's ICCA claims does not preclude its present Fort Reno lands claim has already been made in Plaintiff's Surreply filed on June 20, 2007 at pages 9-11 (Docket # 23). As plaintiff concedes, Rule 59(e) may not be used to "rehash" arguments already made to the court, citing New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995). (Pl. Memo at 2). See also  National Metal Finishing Company v. BarclaysAmerican / Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990).  In addition, plaintiff could, and should, have made this argument in its Opposition to Defendants' Motion to Dismiss filed on January 29, 2007, since the government raised its claim preclusion argument and its Section 22(a) (of the ICCA) argument in its Motion to Dismiss.  Similarly, the essence of  Plaintiff's argument in which it relies upon Arizona v. California, 530 U.S. 392 (2000), (at pages 6-9 of its Motion) was raised at pages 9-11 of

Plaintiff's Surreply, although without specific mention of the Arizona v. California decision. The plaintiff certainly could have cited, and specifically relied upon, Arizona v. California in its Surreply.

In short, Plaintiff' previously raised its two Rule 59(e) arguments and these were rejected by the Court. This fact, by itself, warrants denial of the plaintiff's motion.

## II. Plaintiff's Argument that the 1965 Settlement Did not Preclude the Present Ft. Reno Claim is Devoid of Merit.

Plaintiff argues, in essence, that the 1965 settlement of its ICCA claims could not operate so as create a bar to plaintiff's present Ft. Reno lands claim because this claim arose in 1948. See Motion at 2-5. This argument ignores the precise language of Paragraph 2 of the 1965 Stipulation for Entry of Final Judgment filed in the plaintiff's ICCA suit and quoted at page 9 of the court's Opinion. Paragraph No. 2 refers to the "subject matter" of the claims which a plaintiff tribe asserted/could have asserted under the ICCA; the parties clearly intended to bar any future claim against the United States the **subject of which was the Ft. Reno lands.** This language refutes the Tribes' argument that the present Ft. Reno claim is different from the Ft. Reno claim expressly stated in the 1958 and 1961 severed (amended) ICCA petitions. Since the Ft. Reno lands are the subject of plaintiff's Ft. Reno claim under the ICCA and the subject of the Ft. Reno claim in the instant lawsuit, the current Ft. Reno claim is barred.

The Tribes argue that there were factual inconsistencies in the record before the ICC as to the amount of acreage within the 1869 Reservation ceded by the Tribes, and, thus there is a " . . . a genuine issue whether the lands of Fort Reno were included within the acreage for which the Tribes sought compensation before the Commission . . . " which effectively precludes the Court's reliance upon the 1965 settlement of the Tribes' ICCA lawuit as an alternative ground for

4

dismissal. (Pl. Mot. at 9).   Yet, the fact is that the respective real estate appraisers for the Tribes and the United States used the identical "acreage ceded" figure of 4,608,878 acres (see excerpts of report of Tribe's appraiser found in Attachment J to government's Memorandum in Support of Motion to Dismiss at 145; and excerpts of report of government's appraiser found in Attachment I to the government's Memorandum at 88).  More importantly, the ICC **found** that the 1891 cession of the 1869 Reservation involved " . . . some **4,608,878 acres** [ceded] to the United States for the alleged unconscionable consideration of $1,500,000." (Emphasis added).  See Cheyenne-Arapaho Tribes of Oklahoma v. United States, 16 Ind. Cl. Comm.162 (1965), Finding Nos. 55 and 56 at 164-165. [1]   This 4,608,878 acre-figure was derived by deducting from the total acreage of the 1869 Reservation - - that is, the 5,138,560- acre figure used by both appraisers - - a total of 529,682 acres representing only the 529,682 acres allotted to the Cheyenne-Arapaho Indians, the figure used by both appraisers).  Neither appraiser deducted the acreage of the "reserved" lands - - the lands used for military, school, school-agency and agency lands – which included the 9,493 acres within the Ft. Reno Military Reserve.  Therefore, when the ICC found that **4,608,878 acres** had been ceded under the 1891 Agreement, **it found, in effect, that all of the reserved lands (including Ft. Reno) had been ceded.**

---

[1] In order for the Commission to determine whether the Tribes had received "unconscionable consideration" for the lands ceded in 1891 (that is, whether the amount the government paid for these lands was so far below their 1891 fair market value so as to deemed "unconscionable"), it was required that the Commission first make a finding as to the number of acres which had been ceded.  Only then could the Commission determine the per acre consideration which had been paid in 1891 which was a prerequisite to determining whether the per acre consideration paid was so far below the 1891 per acre fair market value of these lands so as to be "unconscionable" within the meaning of Clause (3) of Section 2 of the ICCA.

### A. The Commission's Findings Establish that the Ft. Reno Lands Were Within the Acreage Ceded Under the 1891 Cession.

The Commission's Finding Nos. 55 and 56 are controlling here. See <u>United States v. Pend Oreille Pub. Util. Dist. No. 1</u>, 926 F.2d 1502, 1507-1509 (9th Cir. 1991).[2] Thus, the Tribes' argument that the Ft. Reno lands were not ceded was expressly addressed by the Indian Claims Commission and resolved against the Plaintiff Tribes. In short, the Tribes had this issue adjudicated against them by the ICC and lost. See <u>St. Pierre v. Norton</u>, 498 F. Supp. 2d 214, 222 (D.D.C. 2007); <u>Singh v. Parnes</u> 199 F. Supp. 2d 152, 158 -159 (S.D.N.Y., 2002). The Tribe cannot collaterally attack Finding Nos. 55 and 56. See also Defendants' Opposition to Plaintiff Tribes' Rule 56(f) Motion for Continuance to Permit Discovery at 2, footnote 1 (Docket # 26).

In sum, there is no "genuine issue" (Pl. Rule 59(e) Mot. at 9) as to whether the Ft. Reno lands were within the acreage found to have been ceded pursuant to the 1891 Agreement and for which the Tribes were compensated. The Commission's Finding Nos. 55 and 56 resolved this issue; the Tribes are bound by these findings under principles of collateral estoppel. See <u>Securities Indus. Ass'n v. Bd. of Governors</u>, 900 F.2d 360, 363-364 9 (D.C. Cir. 1990); and <u>Elliott v. F.D.I.C.</u>, 305 F. Supp. 2d 79, 83 (D.D.C. 2004).

### B. The Arizona v. California Decision Does Not Invalidate the Court's "Alternative Ground for Dismissal."

Plaintiff now contends that the decision in <u>Arizona v. California</u>, 530 U.S. 392 (2000), is controlling here and precludes the Court from ruling that the Tribes lost their right to pursue their

---

[2] The Court of Appeals for the Ninth Circuit inferred from the acreage figures in the Commission's findings that the Commission had found (albeit indirectly) that the tribe's aboriginal title to certain riverbed lands had been extinguished.

present (or any other) Ft. Reno lands claim because of the entry of final judgment in favor of the the Tribes pursuant to the stipulated settlement of the Tribes' ICCA claims in ICC Docket No. 329-A, and that the 1965 settlement constitutes an "alternative ground" for dismissal.  Plaintiff, in effect, relies upon the general rule referenced in <u>Arizona v. California</u> that "settlements ordinarily occasion no *issue preclusion* (sometimes called collateral estoppel), unless it is clear, as it is not here, that the parties intend their agreement to have such effect." (emphasis supplied). 530 U.S. at 414.

      We submit that the "general rule" has no applicability in this case.  Unlike this case, the <u>Arizona v. California</u> "general rule" was addressed to the use of non-mutual offensive collateral estoppel - - that is, collateral estoppel was asserted by the "State parties" which had not been parties to the ICC Docket No. 320 proceeding.  Here, the parties are the same - - the Tribe and the United States.  Judgments rendered in prior suits are to be given preclusive effect in a subsequent action between the same parties or their privies, and "a party cannot avoid the preclusive effect of *res judicata* or collateral estoppel by recasting allegations." <u>Singh v. Parnes</u>, 199 F. Supp.2d at 158-159 (S.D.N.Y., 2002) (emphasis in original) ("judgments rendered in prior suits may be given preclusive effect in a subsequent action between the same parties or their privies").

      Second, the parties to the Tribes' ICCA lawsuit clearly intended that the question of whether the "reserved" lands (which included the Ft. Reno lands) had been ceded by the 1891 Agreement had been settled for all time, thereby falling within the exception to the "general rule" noted in <u>Arizona v. California</u>.  <u>See</u> <u>State ex rel. Martinez v. Kerr-McGee Corporation</u>, 120 N.M. 118, 898 P. 2d 1256, 1260-1261 (Ct. App. N. Mex. 1995).  This intent is evident in the language

of Paragraph No. 2 of the Stipulation for Entry of Final Judgment filed in the Tribes' ICCA case which is quoted at page 9 of the September 27, 2007 Opinion.  By referring to the "subject matter of those claims" in paragraph No. 2 of the Stipulation, the parties plainly intended to bar any future claim the <u>subject of which</u> was the Ft. Reno lands.  Since the subject of the Tribes' ICCA Ft. Reno claim and the current Ft. Reno claim is the Ft. Reno lands, the current claim is barred.

As Defendants noted in their Motion to Dismiss, Paragraph No. 2 made no exclusion of the Ft. Reno lands so as to exempt them from the reach of the settlement.  Thus, the Court's conclusion that "[s]urely, plaintiff was aware that the government included the Fort Reno lands . . . ." within the 1965 settlement of the Tribes' ICCA case is absolutely correct.  Of course, the United States would never have agreed to settle the ICCA case, if had understood that the Tribes would be free to file a future quiet title suit against the government with respect to any of the ceded lands, which included the Ft. Reno lands.

The court decisions which have given preclusive effect to prior determinations made by the Indian Claims Commission are largely based upon a theory of "statutory preclusion" - - that is, the passage of the ICCA created a "statutory method of preclusion" <u>See</u> <u>Kerr-McGee</u>, 898 P. 2d at 1263; <u>Kerr-McGee</u> cites the <u>Pend Oreille</u> decision as an example of statutory preclusion. The application of statutory preclusion means that if a tribe was compensated under the ICCA for the extinguishment of title to a particular tract of land to which it later asserts title (or in which it asserts a property interest), then statutory preclusion bars this later claim.  The Tribes were paid in ICC Docket No. 329-A for the extinguishment of title to, or any interest in (pursuant to the 1891 cession Agreement) all the lands ( a total of 4,608,878 acres) within their 1869 Reservation which the Commission found had been ceded.  The Indian Claims Commission found that

8

the"reserved" lands (which encompassed the Ft. Reno lands) had been ceded. [3] The Tribes were paid for the ceded lands pursuant to the final judgment entered pursuant to the 1965 settlement.  A fortiori, it necessarily follows that the Tribes' present claim of a beneficial interest in the Ft. Reno lands is barred by the doctrine of res judicata and by Section 22(a) of the ICCA which is the governing statutory method of preclusion created by Congress.

## CONCLUSION

The court's conclusion that the 1965 settlement of the Tribes' claims in ICC Docket No. 329-A (pursuant to which the Tribes were paid for the lands ceded by the 1891 cession Agreement which cession the ICC  found to compass the "reserved" lands (which included the Ft. Reno lands)) provides an "alternative ground for dismissal of the instant lawsuit"(Opin. at  9 note 3) concerning the very same Ft. Reno lands is legally sound.  The 1965 settlement operates so as to bar the present suit under the doctrine of res judicata and by virtue of "statutory preclusion" under Section 22(a) of the ICCA.

---

[3] Plaintiff may opt to resurrect its argument in its response to the government's motion for leave to file a response to the Tribes' Surreply (Docket # 27 at 11) that Arizona v. California distinguished the Pend Oreille decision (and other cases involving prior ICC decisions) on the grounds that the plaintiff tribes in Pend Oreille (and other ICCA cases) had sought compensation for the taking of the lands at issue under the ICCA and had not claimed "continuing title" to the lands in question, as plaintiff does.  But, the Tribes sought compensation for all the lands ceded in 1891 (which the Commission found included all reserved" lands of which the Ft. Reno lands were a part) and the "'finality clauses' "(Opinion at 9) in the1965 settlement of the Tribes' Docket No. 329-A claims did not exempt the Ft. Reno lands from that settlement.

We note that Finding Nos. 55 and 56 were essential to give effect to Congress' language in Section 22(a) of the ICCA: "The payment of any claim, after its determination in accordance with this chapter [Act], shall be a full discharge of the United States of all claims and demands **touching any of the matters involved in the controversy."** 25 U.S.C. **§** 70u. (emphasis added). This is the statutory method of preclusion created by Congress.  The Arizona v. California decision expressly states (530 U.S. at 417) that the Court was not addressing the "correctness" of this proposition which was articulated in the Pend Oreille decision.

9

There is no "genuine issue" as to whether the Ft. Reno lands were ceded in 1891, because the ICC finally resolved this issue when it made Finding Nos. 55 and 56 in 1965 in support of its 1965 Opinion approving the 1965 settlement of ICC Docket No. 329-A.  Clearly, the Tribes are bound by Finding Nos. 55 and 56 by virtue of the doctrine of collateral estoppel and nothing in the Arizona v. California decision refutes the application of that doctrine here.  More importantly, **nothing in** Arizona v. California **invalidates** the court's conclusion that there is an "alternative ground for dismissal" of the instant case based upon the litigation by the Tribes in ICC Docket No. 329-A and the "loss" of the Tribes' Ft. Reno lands claim under the terms of the 1965 settlement of said docket.  The plaintiff has not shown, and cannot show, that the court's ruling that there exists an "alternative ground for dismissal" of the instant lawsuit constitutes "clear error" within the meaning of Rule 59(e).

      In sum, plaintiff's Rule 59(e) motion is completely devoid of merit and must be denied. Dated this 23rd day of October, 2007.

      Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General

/s/ James M. Upton
JAMES M. UPTON
U.S. Department of Justice
Environment & Natural Resources
  Division
Natural Resources Section
P.O. Box 663
Washington, D.C.   20044-0663
Ph. (202) 305-0482
Fax: (202) 305-0506
E-mail address: james.upton
 @usdoj.gov

Attorneys for Defendants

OF COUNSEL:

Maria Wiseman, Esq.
Office of the Solicitor
U.S. Department of the Interior
Main Bldg. - - Mail Stop 6456
1849 C St., N.W.
Washington, D.C.  20240


James Snow, Esq.
Office of the General Counsel
U.S. Department of Agriculture
1400 Independence Avenue, S.W.
Washington, D.C.  20250