UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHEYENNE-ARAPAHO TRIBES | ) | |
| OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 06-519 (PLF) |
| | ) | |
| UNITED STATES OF AMERICA, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
TO ALTER OR AMEND THE COURT'S SEPTEMBER 27, 2007 JUDGMENT

INTRODUCTION

Defendants' Opposition warrants very brief reply. The Tribes would simply note, first, that the Government has **yet** to address in any meaningful fashion the undisputed fact the Indian Claims Commission **lacked jurisdiction** of any claim accruing after August 1946, and the claim to "set aside" the nominal transfer of the Fort Reno lands to the Department of Agriculture that took place in **1948**[1] was manifestly beyond the jurisdiction of Commission. Second, the Government has done little to clarify a discrepancy in acreage shown by the record - between the 732,800 portion of the 4,608,878 acres shown in the Severed Petition as "[r]eserved to the Wichita Tribe", Severed Petition, ¶10 and the 743,610 acres which the Government's own "Historical Record" (Attachment H to Defendants' Motion to Dismiss) indicates as the correct

---

[1] We have also emphasized that the claim to "set aside" the 1948 transfer to Department of Agriculture was framed such that the Fort Reno lands at issue in ¶9(b) of the Severed Petition of November 25,1958 (Attachment P to Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss) were treated as separate and distinct from the lands for which monetary compensation was sought in ¶10.

number attributable to lands reserved for the Wichita - a discrepancy which could be

attributable to the Fort Reno lands, and which in any case should not be taken as an issue

ripe for summary resolution against the Tribes.

<u>ARGUMENT</u>

THE ICC SETTLEMENT DOES NOT EXTINGUISH A QUIET TITLE
CLAIM BEYOND THE JURISDICTION OF THE COMMISSION

The Government has yet to introduce authority for the proposition a settlement

before the Indian Claims Commission can serve to extinguish a quiet title claim that

neither accrued before August 1946 nor involved a request for monetary compensation.[2]

<u>United States v. Pend Oreille Public Utility District No. 1</u>, 926 F.2d 1502 (9th Cir. 1991)

does no better to establish the principle than predecessors introduced during the course

of these proceedings, in that the original taking of aboriginal lands in <u>Pend Oreille</u>,

including the riverbed at issue, took place before 1946, <u>id.</u> at 1507, and the

Tribe had sought monetary compensation before the Commission.

The Government would have the Court ignore the teaching of <u>Arizona v.

California</u>[3] to the effect that "settlements ordinarily occasion no issue preclusion

(sometimes called collateral estoppel) ..." on the primary ground this "'general rule' was

addressed to the use of non-mutual offensive collateral estoppel ...."  Defendants'

---

[2]These were the grounds invoked by the Solicitor of the Department of Interior
for holding the ICC settlement did **not** serve to extinguish the Tribes' quiet title claim.
<u>See</u> Solicitor to Assistant Secretary for Indian Affairs, February 26, 1999 (Attachment 1
to Plaintiff's Opposition to Defendants' Motion to Dismiss) at 6.

[3]530 U.S. 392, 120 S.Ct. 1455, 146 L.Ed.2d 308 (2000).

Opposition at 7.[4]   However, we submit there can be little doubt the same result would have obtained in Arizona if claimed "boundary lands", id., 530 U.S. at 401, in question had been **beyond the jurisdiction** of the Commission in the first instance.  Indeed, if the Commission entertained a claim manifestly beyond its jurisdiction, we submit any purported judgment thereon would be void and subject to collateral attack. See, e.g., In re Four Seasons Securities Laws Litigation, 502 F.2d 834, 842 (10th Cir. 1974), cert. denied sub nom. Ohio v. Arthur Anderson and Co., 419 U.S. 1034 (1974) (judgment void "if the court which rendered it lacked jurisdiction of the subject matter ....").

Finally, we note that, with respect to the apparent discrepancy in acreage (between 743,610 attributed to the Wichita Tribe in the Government's own "Historical Record" and the 732,800 acres "[r]eserved to the Wichita Tribe" shown in ¶ 10 that make up a part of the 4,608,878 acreage for which compensation was sought), the Government has done little more than repeat by rote the acreage figure shown in "Finding Nos. 55 and 56" of the Indian Claims Commission report of settlement.[5]  This does nothing to address

---

[4]The Government also contends "the parties to the ... ICCA lawsuit clearly intended that the question whether the 'reserved' lands (which included the Ft. Reno lands) had been ceded by the 1891 Agreement had been settled for all time ...." Defendants' Opposition at 7.  Yet intent is a question of fact rarely appropriate for summary resolution, and here the allegations in ¶ 9(b) of the Severed Petition of November 25, 1958 were framed such that they show the Tribes' intention to treat the lands of Fort Reno subject to the "set aside" request as separate and apart from lands for which monetary compensation was sought in ¶ 10 of the Severed Petition.

[5]We are bound to note a certain irony in the Government's reference to these findings **for the first time** in the context of an opposition to a Motion to Alter or Amend the Judgment.  The Government did make an effort to invoke them previously, but only in an attempted reply to the Tribes' Surreply.  See Defendants' Motion for Leave to File the Attached Response to Plaintiff's Surreply.  However, the Court denied the Motion, thereby declining to consider the "Attached Response" that included reference to ICC Finding Numbers 55 an 56.

the genuine factual issue as to whether, in light of the additional 10,810 acres to the

Wichita Tribe (or just two tenths of one percent of 4,608,878 acres) shown in the

"Historical Record" introduced by **the Government** during the proceedings before the

Commission, the lands of Fort Reno were actually included in the acreage compensated

for in the ICC settlement.

<u>CONCLUSION</u>

For the foregoing reasons, and for reasons asserted previously, the Cheyenne

Arapaho Tribes of Oklahoma respectfully request pursuant Rule 59(e) of the Federal

Rules of Civil Procedure that this Court exercise its broad discretion in favor of altering

or amending the judgment by withdrawing footnote 3 on page 9 of the Opinion

underlying the judgment entered September 27, 2007, together with the reference to an

alternative ground for dismissal appearing in the concluding sentence on page 13.

Respectfully submitted,

LAW OFFICE OF RICHARD J. GRELLNER

   /s/
Richard J. Grellner, OBA #15521, <u>pro</u> <u>hac</u> <u>vice</u>

439 NW 18th Street
Oklahoma City, Oklahoma 73103
Tel. (405) 834-8484
Fax: (405) 602-0990
E-mail; rjgrellner@hotmail.com

LAW OFFICE OF JOHN P. RACIN


 /s/
John P. Racin    Bar No. 942003

1721 Lamont Street, N.W.
Washington, D.C.  20010
202.265.2516

Attorneys for Plaintiff Tribes